**FILED**

SEP - 4 2013

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OFMISSOURI**

**EASTERN DIVISION**

CHERI RODGERS,

                         Plaintiff

    vs.

Curators of the University of Missouri System, in official capacity as a state entity
and

The Student Electronic Media Association Student Organization at UMSL in private and state capacity
and

ORINTHIA MONTAGUE, individually and in her official capacities as UMSL's Associate Vice Provost of Student Affairs and UM-System's Designated Primary Officer
and

CURTIS COONROD, individually and in his official capacity as UMSL's Vice Provost of Student Affairs
and

GLEN HAHN COPE, individually and in her official capacities as UMSL's University Provost and Vice Chancellor for Academic Affairs
and

DEBORAH BURRIS individually and in her official capacities as UMSL's Chief Diversity Officer and Director of UMSL's Office of Equal Opportunity
and

DEBORAH NOBEL-TRIPLETT, PhD individually and in her official capacity as the UM-System's Assistant Vice President for Academic Affairs
and

MIRIAM HUFFMAN individually and in her official capacities as Student Mediator and Director of Student Life at UMSL
and

D'ANDRE BRADDIX individually and in his official capacities as UMSL Vice Provost Assistant, Um-System's Designated Primary Officer at UMSL, Asst. Dean Student Conduct And Community Standards, Student Court Advisor, and Student Life Project Support Specialist,
and

HELEN WARD individually and in her official capacity as Administrative Assistant to UMSL Office of Student Affairs
and

TANISHA STEVENS individually and in her official capacity as Student Advocate of UMSL's Office of Academic Affairs at
and

CHARLES GRANGER individually and in his official capacities as a Faculty Member and Student Advisor at UMSL Department of Biology
and

MARCEL BECHTHOLDT individually and in his official capacities as an UMSL Faculty Professor, UMSL's Information Tech. Services System Administrator, and SEMPA Faculty Advisor
and

CRAIG ROBINSON individually and in his official capacities as SEMPA Treasurer and UMSL's Supervisor of Environmental Health & Safety Dept.
and

**CIVIL COMPLAINT**

**Case No.** _____

**JURY TRIAL DEMANDED**

KEITH ROBINSON individually and in his official capacities as
SEMPA Station Manager and UMSL's Information Technology
Services Systems Administrator
and
OFFICER FRANK SCHMIDT individually and in his official
capacities as a Missouri State Police Officer and UMSL Campus
Police Officer
and
OFFICER BRANDON BURTON individually and in his official
capacity as a Missouri State Police Officer and UMSL Campus
Police Officer
and
ETHAN CHOU individually and in his official capacities as Chief
Justice of UMSL Student Court and as UMSL's authorized
decision maker
and
RYAN ORDWAY individually and in his official capacities as
SEMPA's Outgoing Vice President, UMSL TV GM, and UMSL's
authorized decision maker
and
TIFFANY AXTON individually and in her official capacities as
SEMPA 2009 V.P., SEMPA 2010 President, and UMSL's
authorized decision maker
and
STEVEN ENGELMEYER individually and in his official capacities
as SEMPA's past 2008 President, a 2009-2010 SEMPA Station
Executive, and UMSL's authorized decision maker
and
JOHN EDWARDS individually and in his official capacities as
SEMPA's Sports Director and as UMSL's authorized decision
maker

  Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

## CIVIL COMPLAINT

Plaintiff Cheri Rodgers, hereby as Pro se litigant timely refiles this complaint within the prescribed one year statute of

limitations pursuant to Missouri Savings Statute, Mo. Rev. Stat. § 516.230 **for Case No.** 4:11-CV-515 JAR, and alleges as

follows:

### I. JURISDICATION AND VENUE

1. The Missouri Eastern District Court jurisdiction over this civil action is invoked pursuant to: (a) Mo.Rev.Stat. §

   516.230 as refiles this suit against the same Defendants within the one-year savings period prescribed under the

   Missouri Savings Statute; (b) 28 U.S.C. §1332 as the amount in controversy exceeds the sum or value of $75,000;

   (c) 28 U.S.C. §1331 as this action arises under the Constitution and federal laws of the United States; and (d) 28

   U.S.C. § 1343 as this action arises under federal laws pursuant to Title VI Civil Rights 1964 laws under 2000 and

2004, the Fourteenth Amendment Due Process and Equal Protection Clauses, waiver of the Eleventh Amendment sovereign immunity, and 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988.

2. Plaintiff further invokes this Court supplemental jurisdiction to hear and decide state law claims pursuant to 28 U.S.C. §1367 as this action claims protections under Missouri Human Rights Act Sections 213.065 and 213.070 equal rights in places of public accommodations and other state claims.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because (a) the Defendant Board of Curators' place of business is in St. Louis County and within the jurisdiction of this Court, (b) a substantial part of the unlawful acts, practices, and courses of business constituting the violations alleged herein arose within the jurisdiction of this Court, and (c) mostly all individual defendant either reside, work, and/or attend school within the UM-System in St. Louis County. Thus, this Court is proper.

## II. THE PARTIES

### A. PLAINTIFF (1)

4. Cheri Rodgers is an African American resident of St. Louis County, MO who was previously enrolled at the University of Missouri St. Louis as an honors graduate student from January 2007 through May 2011.

### B. DEFENDANT ENTITIES (2)

5. **University of Missouri System (UM-System)** is an incorporated state university system created as a body politic named "The Curators of the University of Missouri" **(Board of Curators)** by the state of Missouri. **University of Missouri St. Louis (UMSL)** is a state university located in St. Louis, Missouri that is part of the UM-System. Both entities are recipients of federal funds.

6. **Student Electronic Media Association Organization (SEMPA)** is a private student organization in St. Louis, MO located on the UMSL campus that has been granted state authority by the Board of Curators to conduct state business via the management of its student internships and campus radio and TV stations programs and facilities. SEMPA is a recipient of federal funds.

### C. INDIVIDUAL DEFENDANTS

### A. The Administration Defendants (7)

7. **Glen Hahn Cope-** works in St. Louis County, MO within the UM-System as University Provost and Vice Chancellor of Academic Affairs at UMSL in Woods Hall.

8. **Orinthia Montague-** worked in St. Louis County, MO within the UM-System as UMSL's Student Affairs Associate Vice Provost and the UM-System's Designated Primary Administrative Officer in Woods Hall under the direct supervision of Curtis Coonrod during the time of alleged events.

9. **D'Andre Braddix** works within the UM-System in St. Louis County and has served in multiple capacities on the UMSL campus during the time of alleged events. He served as assistant to Montegue in Student Affairs in 2008, as Student Life's Project Support Specialist in 2009-2010 to Huffman, as UMSL's Student Court Advisor under the direct supervision of Montegue in 2009-2010, and then promoted to Assistant to Student Affairs Vice Provosts and UM-System's Designated Primary Administrative Officer in 2010 under the direct supervision of Coonrod.

10. **Deborah Burris-** works in St. Louis County, MO within the UM-System and serves as UMSL's Director of Equal Opportunity and the UM-System's Chief Diversity Officer reporting directly to the Chancellor in the Office of the Chancellor in Woods Hall.

11. **Deborah Nobel-Triplett, PhD-** works in Columbia, Missouri within the UM-System as the Assistant Vice President of the UM-System Academic Affairs.

12. **Miriam Huffman** works in St. Louis County, MO within the UM-System as UMSL's Student Mediator and Student Life Director.

**B. Staff Defendants (2)**

13. **Helen Ward-** works in St. Louis County, MO within the UM-System and served as Administrative Assistant to Montague and Coonrod in the Office of Student Affairs on the UMSL campus in Woods Hall.

14. **Tanisha Stevens-** works in St. Louis County, MO within the UM-System as the UMSL campus Student Advocate and Academic Affairs' Undergrad Academic Program Coordinator under the direct supervision of Glen Cope in Woods Hall.

**C. UMSL Police Defendants (2)**

15. **Officer Frank Schmidt-** works in St. Louis County, MO within the UM-System and served as both an UMSL campus and licensed Missouri state police officer during the time unlawful events alleged in this case occurred.

16. **Officer Brandon Burton-** works in St. Louis County, MO within the UM-System and served as both an UMSL campus and licensed Missouri state police officer during the time unlawful events alleged in this case occurred.

**D. Faculty Defendants (2)**

17. **Charles Granger-** works in St. Louis County, MO within the UM-System as a tenured, full-time UMSL Biology Professor and a paid Faculty Advisor to SEMPA.

18. **Marcel Bechtoldt-** works within the UM-System in St. Louis County, MO as an UMSL Faculty Professor, UMSL IT Services System Administrator, and a paid Technical Advisor to SEMPA.

**E. The Student Court Defendant (1)**

19. **Ethan Chou-** resides in St. Louis, MO and was an enrolled senior student at UMSL who served as the Chief Justice of Student Court and an UM-System during the time the unlawful events alleged occurred. He had granted authority to make decisions on behalf of SEMPA and the state university.

### F. SEMPA Defendants (6)

20. **Craig Robinson** works in St. Louis County, MO within the UM-System as UMSL's Supervisor of Environmental Health & Safety Dept. in Woods Hall. Though a SEMPA member, DJ, and Treasurer, C. Robinson was also an UMSL, state employee at all times of alleged events granted authority by both recipients to make decisions on behalf of SEMPA and the state university regarding their students and facilities.

21. **Keith Robinson-** worked in St. Louis County, MO within the UM-System as UMSL's IT Systems Administrator. Though a SEMPA member, DJ, and paid Station Manager for SEMPA's and UMSL's radio facility, K. Robinson was also an UMSL, state employee at all times of alleged events granted authority by both recipients to make decisions on behalf of SEMPA and the state university regarding their students and facilities.

22. **Tiffany Axton**- was a resident of St. Louis County, MO, UMSL student, SEMPA member, SEMPA's 2009 Vice President and Rodgers' 2009-2010 replacement President. Axton was granted authority by both recipients to make decisions on behalf of SEMPA and the state university regarding their students and facilities.

23. **Ryan Ordway-** was a resident of St. Louis, MO, UMSL student, and SEMPA member who served as SEMPA's 2008-2009 Vice President and later as SEMPA's UMSL TV General Manager (GM). Ordway was granted authority by SEMPA to make decisions on behalf of SEMPA and UMSL regarding other students' participation in SEMPA.

24. **Stephen Engelmeyer**- is a resident of St. Louis County, MO who served as SEMPA's President from September 2008 through March 2009, an UMSL student, a radio DJ, and SEMPA member. Engelmeyer was granted authority by SEMPA to make decisions on behalf of SEMPA and UMSL regarding other students' participation in SEMPA.

25. **John Edwards-** is a resident of St. Louis County, MO who was an UMSL student and SEMPA's Sports Director of The U during times of alleged events. Edwards was granted authority by SEMPA to make decisions on behalf of SEMPA and UMSL regarding other students' participation in SEMPA.

### III. INTRODUCTION

26. SEMPA is private student organization based on the University of Missouri St Louis (UMSL) campus that receives federal funds and free office space from the University of Missouri System (UM-System) Board of Curators. SEMPA has been granted unique authority to make decisions for and manage all operations of the UMSL's newly launched campus radio station facilities and programs under the direct supervision of two faculty advisors.

27. SEMPA is run by elected officers, a President, Vice President, Treasurer, and SGA Rep and on September 11, 2009, Plaintiff became the first African American "elected" to serve a SEMPA president. Like past white presidents,

Plaintiff entered a contract to serve as president for one full year. Plaintiff was immediately treated differently, harassed, and intimidated by white Faculty and SEMPA members who opposed blacks serving in presidential capacities. As a result, Plaintiff was denied the equal opportunity to benefit from the full privileges and advantages of her SEMPA contract and the presidential role the same as similarly situated white persons.

28. When Plaintiff attempted to conduct meetings the first two weeks following her election, she would be threatened, intimidated, and subjected to three separate hostile environments created by white members who aimed to prevent her from performing her presidential job duties. Said hostile environments escalated causing concern for her safety and a witnessing faculty advisor to recommend that she consider securing a sergeant at arms for her protection.

29. In opposition to their discriminatory conduct and for her protection, Plaintiff filed over 30 verbal and written complaints and grievances throughout 9 UM-System departments within 5 months (between Oct. 4, 2009 and Mar. 18, 2010). However, Plaintiff would be systemically rejected by each department's authorized state and private actor and denied due process, administrative intervention, investigation, and needed protection available through the UM-System.

30. Consistent with a pattern and practice of reckless indifference to the deprivation of black students' rights in filed racial discrimination grievances, The University and SEMPA would fail to act in good faith in compliance with federal and state anti-discrimination laws or adhere to its own anti-discrimination policies. Rodgers would be left unprotected and allowed to be harassed, placed in hostile environments, and retaliated against and threatened for furthering her racial discrimination claims to throughout the campus administration.

31. As a direct result of the UM-System's and SEMPA's willful negligence and faculty members discriminatory animus, in October, 30 2009, Rodgers would be assaulted by a faculty member on the UMSL campus who attempted to prevent her from continuing to serve in her role and furthering her complaints.

32. Despite Rodgers' numerous filed complaints and grievances and evidence of the deprivation of her rights, UM-System and SEMPA officials refused to reasonably respond or provide her equal protections from foreseeable harm.

33. As a direct result, on Nov. 17, 2009, with the substantial aid and assistance of state actors administrators, white faculty and SEMPA members were allowed to abruptly impeach Plaintiff as president and revoke her SEMPA membership without warning, just cause, due process, or formal notice afterwards.

34. Despite having maintained an impeccable record and having committed no wrongdoings, Rodgers would be replaced by a less qualified white female freshman student who had just joined the organization and the UMSL campus 3-months prior.

35. This case holds that the entire UM-System's departmental actions and inactions were motivated by purposeful racial discrimination as no legitimate, non-discriminatory reason exists to explain why 20 state actors allowed the conscious deprivation of Plaintiff's rights.   Their blatant refusal to reasonably respond to actual notice they received that alleged serious racial discrimination, harassment, retaliation, assault, hostile environments, ongoing risk of harm, threats and intimidation, and other unlawful conduct was negligent.

36. Authorized UM-System and SEMPA officials engaged in shocking acts that they knew or should have known were unlawful and would cause Plaintiff harm. Their flagrant actions reveal a pattern and practice of racial discrimination, a conspiracy to deprive, a failed anti-discrimination policy, system-wide reckless indifference, willful neglect, a systematic rejection of racial discrimination complaints, and the systemic disparate treatment of black students with discrimination complaints.

37. The fact that nine departments separately refused to provide responsive action, appropriate supervision, or any protection to an African American student who has reported an assault by a faculty member and expressed concerns about continued risk of harm should be found shocking and outrageous.  The Curators' and SEMPA's actions and inactions reveal their individual tolerance, support, willful participation in, and facilitation of racially discriminatory activity in their places of public accommodations.

38. Further, the fact that top administrators and commissioned state actors lacked any concern for risk of punishment or reprimand for their "known" unlawful retaliatory or discriminating conduct should give this court reason to believe that each acted in accordance with a known UM-System custom that tolerates, allows, and facilitates racial discrimination, harassment, and retaliation against minorities in violation of federal and state law.

39. As a result, Rodgers was injured warranting this suit.

IV. ISSUES BROUGHT FORTH

40. COMES NOW Plaintiff and presents the following legal issues brought forth in this case.

**D. Waiver of State's Sovereign Immunity Protection under Eleventh Amendment**

41. The Eleventh Amendment provides that any state entity that receives any federal funding has "voluntarily" waived its sovereign immunity protection under Title VI and may be held liable in suit for acts of intentional racial discrimination occurring in its state operations and by authorized officials and private actors. Absent a state's waiver, Section 5 of the Fourteenth Amendment grants Congress the power to enforce the guarantees of Due Process and Equal Protection of the laws when a deprivation of constitutional and civil rights has occurred. Further, the Missouri Revised Statutes Human Rights Act-Section 213.065 provides that no state entity or official can invoke sovereign immunity for violations of Missouri Human Rights Act in claims alleging racial discrimination in places of public accommodation and arising out of willful and negligent disregard of state laws.

42. Thus, as federal funding recipients and agents of a place of public accommodations, the Board of Curators, SEMPA, and individual state Defendants have waived any defense based on sovereign immunity for those racial discrimination, constitutional, and civil rights violations alleged against them in this case. Therefore, this complaint is proper.

## E. ESTABLISHMENT OF CONSTITUTIONALY PROTECED RIGHTS

43. Plaintiff concedes that though a student does not have an inherent right to participate in an extra-curricular program, a student does have a constitutionally protected right to "equally" participate in and benefit from a federally-funded program (i.e. extracurricular and non-extracurricular activities), service, and facility the same as white persons and to be free from a racially discriminatory environment under of Title VI. Plaintiff asserts that her "equal" participation in SEMPA was a constitutionally protected right protected under Title VI. Therefore, Rodgers had an established property interest in her ability to participate in SEMPA as president and a member the same as white persons. This property interest afforded her Due Process protections entitling her to notice and a fair hearing before her impeachment, membership expulsion, breach of her SEMPA contracts, and denial of student services. As Courts have held that violations of Title VI represents an equal violation of the Fourteenth Amendment Equal Protection Clause Rodgers' Title VI rights were further constitutionally protected and entitled to due process before any deprivation of said property interests.

44. MHRA provides Plaintiff with the right to equally participate in SEMPA's and the UM-System's programs, services, and facilities in their places of public accommodation the same as white persons without racial discrimination. Thus Plaintiff had a legitimate claim and entitlement to her full and equal enjoyment, accommodations, advantages, facilities, services, and privileges provided under/by the SEMPA organization. Plaintiff's continued membership and participation in SEMPA constituted a property interest constitutionally protected by the state.

45. Section 1981 also provides Plaintiff with a constitutionally protected right to benefit from the making, performance, modification, enjoyment, enforcement, and termination of her student contracts without interference, breach, and/or severance due to race. This right created a constitutionally protected property interest in Rodgers student contracts entitling her to protections under Fourteenth Amendment Due Process Clause.

46. Thus, Plaintiff's participation in and contract with SEMPA as president and a member was constitutionally protected by federal and state laws  entitling her to Due Process under Fourteenth Amendment before the deprivation of said property (and liberty) interests.

## F. Establishment of State Action

1. Under federal law, discrimination by an establishment or entity is supported by state action if the discrimination

is carried under color of any law, regulation, or custom and required of or enforced by authorized officials and/or private actors of the state. Further, a state's tolerance of discriminatory conduct by private or state individuals in its establishments or on its properties also constitutes state action whether or not the individuals committing discriminatory acts were authorized by state agents to do so.

2.    Plaintiff alleges that each individual Defendant was or became a state actor during the time that events in this case occurred as they: 1) were each cloaked with some measure of state decision-making authority granted to them by an employed state agent, 2) received direct supervision, substantial aid, and encouragement from a state employee to execute discriminatory and/or retaliatory acts, inter alia, 3) performed duties and made binding decisions traditionally exercised by the state that determined Plaintiff's ability to equal access and benefit from the state's contracts, programs, services, and facilities.

3.    Thus, Rodgers hereby establishes state action by all named Defendants.

V. STATEMENT OF COUNTS

47.  COMES NOW Plaintiff and provides the following statement of claims against each Defendant as allowed under law.

## COUNT ONE:

### Defendant UM-System Board of Curators-University of Missouri St. Louis (UMSL)

The allegations set forth in the preceding paragraphs are incorporated and realleged herein.

48.  Plaintiff alleges that racial discrimination does exist on the UMSL campus and is embedded throughout the entire UM-System. The UM-System has shown that it allows, encourages, facilitates and maintains racial discriminatory environments and has routinely failed to monitor, adhere to, and enforce its anti-discrimination policies as promulgated and guaranteed within its student contracts, handbooks, and websites in violation of Title VI.

49.  As a recipient of federal funds, The Curators had a duty not to allow administrators, employees, and students, acting within the scope of their official duties and in the operation of its state university programs, services, and places of public accommodations, to treat Rodgers disparately because of her race. The Curator's actions were negligent and interfered with Rodgers' ability to equally participate in and benefit from university services, activities, privileges, contracts, and places of public accommodations the same as white persons.

50.  The Curators and its authorized state and private actors had a duty to act in good faith in compliance with MHRA, Title VI regulations, federal laws, and its own anti-discrimination policies to protect Rodgers and maintain a non-discriminatory environment in its programs, services, and place of public accommodations. Instead, their pattern and practice of reckless indifference and institutionalized noncompliance with its own policies consistently deprived Rodgers of her protected rights, access to due process, equal protections, and equal opportunities in the

operation of its programs and facilities. It is reasonable to infer that said practices had a disparate impact on similarly situated class.

51. While the Curators have written anti-discrimination policies, its practices exhibit no evidence of 1) enforcement attempts to eradicate racially discriminatory conduct it receives notice of occurring within its operations, 2) proper supervision to ensure that its state actors are abiding by laws or campus policies, or 3) routine monitoring to ensure the effectiveness of said policies. This breach of duty   and failure to properly train and supervise its authorized state actors was negligent directly and proximately causing the deprivation of Plaintiff's constitutionally protected state and federal rights, breach of her student contracts, loss of her property and liberty interest, and foreseeable injuries that could have otherwise been prevented.

52. The Board of Curators actions and inactions directly caused the creation and maintenance of a racially discriminatory and retaliatory environment in its programs and place of public accommodations in violation of MHRA, Title VI 2000d and 2004. Rodgers was injured and now seeks compensatory damages against the Curators for $250,000 under Title VI 2000d and Section 2004 and other compensatory damages, punitive damages, and attorney fees as allowed under MHRA and Section 1988 claims in amounts to be determined by jury.

## COUNT TWO:

### Defendant Student Electronic Media Professionals Association Organization (SEMPA)

The allegations set forth in the preceding paragraphs are incorporated and realleged herein.

53. Defendant SEMPA Student Organization received federal funds from the UM-System as a private entity to perform duties in the operations of the state's radio station on behalf of the UMSL campus.   Thus, SEMPA was cloaked with some measure of state authority and had the duty to supervise its state and private actors to ensure their adherence to the university's anti-discrimination polices and federal and state laws.  SEMPA failed to do so.

54. In violation of Title VI, SEMPA neglected to institute safeguards and an antidiscrimination policy to ensure a nondiscriminatory environment within the organization.  Both as a private entity and state agent, SEMPA engaged in, tolerated, encouraged, and facilitated racially motivated discrimination, harassment, hostile environments, inter alia, retaliation against black members in an effort to deprive them of an equal opportunity to serve as president the same as white persons.  As a result, its decision making agents, acting within the scope their official duties and under color of law, treated Plaintiff differently because of her race. SEMPA's willful negligence prevented Plaintiff from equally participate in or benefit from its services, activities or privileges provided in its place of pubic accommodations.

55. SEMPA's reckless indifference, repeated failure to act in good faith to maintain a non-discriminatory environment, and establishment of a firm custom of the deprivation of African American rights violated MHRA, Title VI, federal

laws, and University anti-discrimination polices caused Rodgers and other African Americans injury, pain, and suffering and had a disparate impact on their protected class. As a result, Rodgers was injured and now seeks compensatory damages against SEMPA for $250,000 under Title VI 2000d and Section 2004 and other compensatory damages, punitive damages, and attorney fees as allowed under MHRA, Section 1988, and Missouri IIED and NIED in amounts to be determined by jury.

## COUNT THREE:

### Defendant ORINTHIA MONTAGUE, Associate Vice Provost of Student Affairs and Designated Primary Officer

The allegations set forth in the preceding paragraphs are incorporated and realleged herein.

56. As an authorized state official specifically charged with the management of racial discrimination complaints, Defendant Orinthia Montague negligently breached her duty of care and duty to protect.  Montegue has repeatedly engaged in unlawful conduct  that supported and contributed to the establishment of a firm University custom that routinely rejects black students' filed racial discrimination complaints.

57. Deviating from the university's own antidiscrimination policies and procedure, Montegue (unmonitored and negligently supervised) has admittedly adjudicated racial discrimination grievances "independently" without conducting an investigation, granting of due process,   or review by the appropriate grievance committee (See Exhibits A and B).

58. In violation of her specific duty to maintain a nondiscriminatory environment, Montegue has led and contributed to egregious constitutional and civil rights violations that resulted in Rodgers' repeated denial of 1) access to a fair hearing, 2) an investigation into her racial discrimination claims, 3) access to needed protections, 4) access to campus services (See Audio Exhibit A), inter alia, 5) protection from a hostile, discriminatory, and retaliatory environment. As a direct result, Plaintiff suffered emotional distress, loss of property interest, and the deprivation of her rights in violation of MCHR, Title VI, Amendment Fourteen, and Sections 1981, 1983, 1985, and 1986.

59. Plaintiff now seeks compensatory damages under Title VI 2000d and 2004 in the amount of $150,000 in Montague's official capacity. In her individual capacity, Plaintiff seeks $150, 000 in compensatory damages as allowed under MHRA, Amendment XIV, and Sections 1981, 1983, 1985, 1986, and 2004 and punitive damages and attorney fees under the same statutes, Section 1988, and Missouri's IIED and NIED claims in amounts to be determined by a jury.

## COUNT FOUR:

### Defendant CURTIS COONROD, Vice Provost of Student Affairs

The allegations set forth in the preceding paragraphs are incorporated and realleged herein.

60. Defendant Curtis Coonrod tolerated, supported, and contributed to the maintenance of a racially discriminatory

environment that he received actual and constructive notice was ongoing, placed Rodgers at risk for injury, and existed on the UMSL campus and within SEMPA. In breach of his duty to protect and duty of care, Coonrod 1) rejected Plaintiff's discrimination complaint without proper review or investigation, 2) denied her routine campus services, 3) impeded her access to due process, 4) intentionally obstructed justice, 5) prevented the furtherance of her police report against a white faculty member, and 6) left her subjected to foreseeable risks of harm.

61. Coonrod owed a duty of care to ensure a nondiscriminatory campus environment. Coonrod's reckless indifference to Rodgers' deprivation of rights and refusal to provide a reasonable response, available campus services, or an investigation into Rodgers' assault claims was grossly negligent leaving Rodgers at risk of continued harm that he had the power to prevent. Coonrod's actions and inactions reveal a discriminatory animus.

62. In conspiracy with Defendant Montegue, Braddix, and Granger, Coonrod deviated from known anti-discrimination policies and regulations provided for under the UM-System, Title VI, federal statutes, or state laws and impeded the proper processing of Rodgers' racial discrimination and assault grievance and denied her available campus services and protections. Plaintiff suffered emotional distress, loss of property interest, and the deprivation of her rights in violation of MCHR, Title VI, Amendment Fourteen, and Sections 1981, 1983, 1985, and 1986.

63. Plaintiff now seeks compensatory damages under Title VI 2000d and 2004 in the amount of $150,000 in Coonrod's official capacity. In his individual capacity, Plaintiff seeks $150, 000 in compensatory damages as allowed under MHRA, Amendment XIV, and Sections 1981, 1983, 1985, 1986, and 2004 and punitive damages and attorney fees under the same statutes, Section 1988, and Missouri's IIED and NIED claims in amounts to be determined by a jury.

## COUNT FIVE:

## Defendant D'ANDRE BRADDIX, UMSL Student Court Advisor, Student Life Project Support Specialist, Asst. to Vice Provost, and Designated Primary Officer

The allegations set forth in the preceding paragraphs are incorporated and realleged herein.

64. As Student Court Advisor and Designated Primary Officer, Defendant D'Andre Braddix breached his duty to act in good faith and protect Rodgers from racially discriminatory and retaliatory environments he personally knew existed. With willful malice and discriminatory animus, Braddix led, conspired, facilitated, and furthered the most egregious and injurious constitutional and civil rights violations against Rodgers. Braddix 1) deliberately breached his duty to protect Plaintiff from a discriminatory environment, 2) repeatedly denied her access to a fair and impartial hearing 3) onerously subjected her to unjust punishments, 4) willfully enjoined and led a conspiracy to deprive her of protected rights and equal opportunities, 5) unlawfully interfered with and severed her student contracts, inter alia, 6) wantonly retaliated against her for engaging in protected activity against whites.

65. Consistent with a firm custom, Braddix repeatedly deviated from UMSL's policies and practices by holding Rodgers to stricter standards in reporting discrimination and creating new university rules in which to subject her to different pains and penalties and deprive her of her rights. Abusing his power, Braddix repeatedly took several adverse actions against Rodgers when she had knowingly committed no wrong doing and fully complied with all university and SEMPA rules and regulations. Braddix cannot proffer or articulate a "legitimate non-discriminatory reason" for his arbitrary and capricious decision-making that led to Plaintiff's second unconstitutional impeachment, unlawful breach of her student contracts, inter alia, denial of her due process rights provided under her student contracts.

66. Braddix's racial animus and retaliatory intent may equally be inferred from the facts surrounding his decision to promptly place Rodgers on academic suspension for being locked in a campus library only 3 minutes after its closing announcement by negligent employees. His adverse action was shocking and outrageous, deviated from UM-System's disciplinary policies, and served to harm and punish "only" Rodgers in retaliation to her filed complaints with OCR and MCHR.

67. Braddix's led, furthered, and authorized faculty and SEMPA defendant's conspired discriminatory and retaliatory actions directly resulting in Rodgers' continued inability to benefit from her student contracts or participate in SEMPA's and UMSL's programs and places of public accommodation the same as white persons. Rodgers was injured and suffered emotional distress, loss of property interest, and the deprivation of her rights in violation of MCHR, Title VI, Amendment Fourteen, and Sections 1981, 1983, 1985, and 1986.

68. Plaintiff now seeks compensatory damages under Title VI 2000d and 2004 in the amount of $150,000 in Braddix's official capacity. In his individual capacity, Plaintiff seeks $150, 000 in compensatory damages as allowed under MHRA, Amendment XIV, and Sections 1981, 1983, 1985, 1986, and 2004 and punitive damages and attorney fees under the same statutes, Section 1988, and Missouri's IIED and NIED claims in amounts to be determined by a jury.

## COUNT SIX:

### MIRIAM HUFFMAN, Director Office of Student Life and UMLS Student Mediator

The allegations set forth in the preceding paragraphs are incorporated and realleged herein.

69. Defendant Miriam Huffman witnessed and received actual and constructive notice that Plaintiff was being subjected to a racially discriminatory and hostile environment within SEMPA by Faculty and SEMPA Defendants. Huffman knew or should have known Plaintiff was being prevented from equally participating in a campus program because of her race, suffering from the deprivation of her protected student, state, and federal rights, and at risk of retaliation by Faculty and SEMPA Defendants.

70. In breach of her duty to protect, Huffman failed to act in good faith to 1) take responsive action, 2) eradicated known discriminatory conduct, 3) protect Rodgers from foreseeable harm, 4) act in compliance with Title VI, MHRA, and other federal and state laws, inter alia, 5) adhere to the UM-System's own anti-discrimination polices.

71. In conspiracy with and support of Faculty and SEMPA Defendants' discriminatory animus and retaliatory conduct, Defendant Huffman planned, facilitated, furthered, and executed adverse action against Rodgers that breached her student contracts and unconstitutionally impeached her while she was knowingly engaged in protected activity.   As a direct result, Plaintiff suffered emotional distress, loss of property interest, and the deprivation of her rights in violation of MCHR, Title VI, Amendment Fourteen, and Sections 1981, 1983, 1985, and 1986.

72. Plaintiff now seeks compensatory damages under Title VI 2000d and 2004 in the amount of $150,000 in Huffman's official capacity. In her individual capacity, Plaintiff seeks $150, 000 in compensatory damages as allowed under MHRA, Amendment XIV, and Sections 1981, 1983, 1985, 1986, and 2004 and punitive damages and attorney fees under the same statutes, Section 1988, and Missouri's IIED and NIED claims in amounts to be determined by a jury.

## COUNT SEVEN:

### Defendant DEBORAH NOBEL-TRIPLETT, PhD. UM-System Asst. Vice President of Academic Affairs

The allegations set forth in the preceding paragraphs are incorporated and realleged herein.

73. After receiving actual notice of a racially discriminatory environment in SEMPA, an assault against Rodgers by faculty member, and a deprivation of rights by Student Affairs administrators on the UMSL campus, Defendant Deborah Nobel-Triplett refused to provide a reasonable response to provide necessary intervention, investigation, or protections.

74. Through her actions and inactions, Triplett allowed, tolerated, and supported a racially discriminatory and hostile environment on the UMSL campus.  Consistent with the UM-System's firm custom of reckless indifference and negligent disregard for the deprivation of black grievants rights, Triplett was deliberately negligent and failed to properly investigate and cease the reported discriminatory conduct and retaliatory actions by UMSL state and private actors when she had the power to do so.

75. In conspiracy with Defendants Montegue, Ward, and Coonrod, Triplett consciously breached her legal duty to maintain a non-discriminatory environment and provide Rodgers with needed protections, campus services, and due process available via her student contracts and required under federal and state laws.  As a direct result, Plaintiff suffered emotional distress, loss of property interest, and the deprivation of her rights in violation of MCHR, Title VI, Amendment Fourteen, and Sections 1981, 1983, 1985, and 1986.

76. Plaintiff now seeks compensatory damages under Title VI 2000d and 2004 in the amount of $150,000 in Triplett's

official capacity. In her individual capacity, Plaintiff seeks $150, 000 in compensatory damages as allowed under MHRA, Amendment XIV, and Sections 1981, 1983, 1985, 1986, and 2004 and punitive damages and attorney fees under the same statutes, Section 1988, and Missouri's IIED and NIED claims in amounts to be determined by a jury.

## COUNT EIGHT:

### Defendant GLEN HAHN COPE, Provost and Vice Chancellor of Academic Affairs

The allegations set forth in the preceding paragraphs are incorporated and realleged herein.

77. Defendant Glen Hahn Cope failed to provide a reasonable response after receiving actual and constructive notice about university officials' deliberate negligence, disparate treatment, and denial of due process when Rodgers repeatedly attempted to file a grievance pursuant to the university's anti-discrimination policy.

78. After receiving reports that Faculty and SEMPA Defendants discriminated and retaliated against Plaintiff because of her race, Cope failed to provide available intervention and protections that Rodgers asked for and needed to prevent further injury (See EXHIBIT C and D). Cope refused to act in good faith to investigate reported acts of racial discrimination, retaliation, and an assault by a faulty member. Said actions and inactions were shocking and outrageous and consistent with the UM-System's firm custom of failure abide by the UM-System anti-discrimination policies and federal and state laws.

79. Cope's reckless indifference, willful blindness, and negligent supervision 1) left Rodgers subject to and foreseeable harm, 2) breached her university contracts, 3) denied her due process, 4) prevented the furtherance of her discrimination grievance, inter alia, 5) maintained a racially discriminatory environment on the UMSL campus. As a direct result, Plaintiff suffered emotional distress, loss of property interest, and the deprivation of her rights in violation of MCHR, Title VI, Amendment Fourteen, and Sections 1981, 1983, 1985, and 1986.

80. Plaintiff now seeks compensatory damages under Title VI 2000d and 2004 in the amount of $150,000 in Cope's official capacity. In her individual capacity, Plaintiff seeks $150, 000 in compensatory damages as allowed under MHRA, Amendment XIV, and Sections 1981, 1983, 1985, 1986, and 2004 and punitive damages and attorney fees under the same statutes, Section 1988, and Missouri's IIED and NIED claims in amounts to be determined by a jury.

## COUNT NINE:

### Defendant HELEN WARD, Administrative Assistant UMSL Office of Student Affairs

The allegations set forth in the preceding paragraphs are incorporated and realleged herein.

81. Defendant Helen Ward willfully engaged in a conspiracy with Defendants Montegue and Coonrod to deprive Rodgers of her equal rights to benefit from university services pursuant to her student contracts, UM-System's

anti-discrimination policies, and federal and state laws.

82. Consistent with a campus-wide pattern and practice of reckless indifference and willful negligence, Ward provided no reasonable response to Rodgers' reports of an assault by an UMSL faculty member, Defendant Granger. In violation of her duty of care and duty to protect, Ward shocking and outrageously, hindered the furtherance of Rodgers' discrimination grievance against him and created a hostile environment when Rodgers attempted to file the grievances multiple times in her office.

83. Because of her own discriminatory animus and willful malice, Ward willfully and consistently provided significant assistance to Student Affairs, Faculty, SEMPA, and Police Defendants in furtherance of their conspiracy to deprive Rodgers of her equal rights and access to due process. As a direct result, Plaintiff was injured and further deprived of her federally and state protected rights.

84. As Plaintiff suffered emotional distress, loss of property interest, and the deprivation of her protected rights in violation of MCHR, Title VI, Amendment Fourteen, and Sections 1981, 1983, 1985, and 1986, she now seeks compensatory damages under Title VI 2000d and 2004 in the amount of $150,000 in Ward's official capacity. In her individual capacity, Plaintiff seeks $150, 000 in compensatory damages as allowed under MHRA, Amendment XIV, and Sections 1981, 1983, 1985, 1986, and 2004 and punitive damages and attorney fees under the same statutes, Section 1988, and Missouri's IIED and NIED claims in amounts to be determined by a jury.

## COUNT TEN:

### Defendant TANISHA STEVENS, Student Advocate UMSL Office of Academic Affairs

The allegations set forth in the preceding paragraphs are incorporated and realleged herein.

85. Defendant Stevens acted in bad faith and showed reckless indifference after receiving actual notice of Rodgers' assault by a faculty member and other constitutional and civil rights violations against Rodgers caused by UM-System administrators, faculty, staff, and students on the UMSL campus. Though Stevens had a duty to protect and to provide a reasonable response pursuant to university policies, Rodgers' student contracts, and federal and state laws, she willfully contributed to the conspiracy to further deprive Rodgers of her known student and constitutionally protected rights.

86. Consistent with a university-wide custom, Stevens refused to investigate any of Plaintiff's serious discrimination claims, inappropriately referred Plaintiff's claim to Student Court, negligently breached her duty to provide protections against discrimination, repeatedly discouraged the furtherance of her discrimination complaint, inter alia, denied Plaintiff's access to due process (See EXHIBITS E and F).

87. As a direct result, Plaintiff suffered greater emotional distress, loss of property interest, inter alia, the deprivation of her rights in violation of MCHR, Title VI, Amendment Fourteen, and Sections 1981, 1983, 1985, and 1986.

88. Plaintiff now seeks compensatory damages under Title VI 2000d and 2004 in the amount of $150,000 in Steven's official capacity. In her individual capacity, Plaintiff seeks $150, 000 in compensatory damages as allowed under MHRA, Amendment XIV, and Sections 1981, 1983, 1985, 1986, and 2004 and punitive damages and attorney fees under the same statutes, Section 1988, and Missouri's IIED and NIED claims in amounts to be determined by a jury.

## COUNT ELEVEN:

### Defendant DEBORAH BURRIS, Director Office of Equal Opportunity and University's Chief Diversity Officer

The allegations set forth in the preceding paragraphs are incorporated and realleged herein.

89. After receiving actual notice of state and private actors' discriminatory conduct and retaliatory actions against Rodgers that prevented her from equally participating in an UMSL student program, Defendant Deborah Burris deliberately breached her legal duty as UMSL's "Chief Diversity Officer" to provide Rodgers with available anti-discrimination services and needed protections. Burris deviated from the university's anti-discrimination policy holding Plaintiff's first detailed complaint to stricter standard for submission and refusing to formally process or investigate Plaintiff's second formal complaint without providing any reason why. Consistent with the UM-System's firm custom of reckless indifference and negligent disregard for the deprivation of Rodgers' rights, Burris refused to investigate any of Plaintiff's claims or provide a reasonable response to cease those constitutional and civil rights violations that she had the power to address.

90. In conspiracy with Defendant administrators, Burris did nothing to address matters reported in Rodgers' complaint. In fact, Burris deliberately prevented Plaintiff's access to due process by not processing her three complaints and left Plaintiff subject to unsupervised discriminatory conduct that she knew was ongoing and posed a continued risk. As a direct result, Plaintiff suffered emotional distress, loss of property interest, and the deprivation of her rights in violation of MCHR, Title VI, Amendment Fourteen, and Sections 1981, 1983, 1985, and 1986.

91. Plaintiff now seeks compensatory damages under Title VI 2000d and 2004 in the amount of $150,000 in Burris' official capacity. In her individual capacity, Plaintiff seeks $150, 000 in compensatory damages as allowed under MHRA, Amendment XIV, and Sections 1981, 1983, 1985, 1986, and 2004 and punitive damages and attorney fees under the same statutes, Section 1988, and Missouri's IIED and NIED claims in amounts to be determined by a jury.

## COUNT TWELVE:

### Defendant Officer FRANK SCHMITT UMSL Campus and State Police Officer

The allegations set forth in the preceding paragraphs are incorporated and realleged herein.

92. Defendant Officer Frank Schmidt had a duty to provide equal police service and to investigate reported crimes on all property controlled by UMSL. Instead, Officer Schmidt engaged in unlawful conduct that knowingly violated Rodgers' constitutional and civil rights and enjoined in a conspiracy with Defendant Burton, Montegue, Ward, and Coonrod that he knew or should have known would cause injury to Rodgers and further racially discriminatory and retaliatory actions against her.

93. Consistent with a firm UM-System pattern and practice, Officer Schmitt treated Plaintiff less favorably than whites in his provision state police services and deliberately deviated from known police reporting policies and procedures by refusing to investigate or file a formal police report regarding Rodgers' claims of a racially motivated assault by a white faculty member (See Audio EXHIBIT B). In violation of his duty to protect, Schmitt failed to take any reasonable action or provide Plaintiff with any available protections normally granted to assault victims.

94. To date, no police was report was ever filed or created under Rodgers' name within the UMSL police station in violation of the federal, state, and Clearly Laws mandating campus incident reporting. Officer Schmitt's use of threats and intimidation to discourage and prevent Rodgers from filing of her assault claim because of her race was a deliberate obstruction of justice that violated Rodgers' protected rights under MHRA, Amendment Fourteen, Sections 1981, and Title VI.

95. But for Officer Schmitt's willful negligence and own discriminatory conduct, Rodgers could have avoided those most serious injuries and deprivations that occurred after filing her November 2, 2009 police report (such as her November 17th unlawful impeachment). As a direct result of Schmitt's reckless indifference, Academic Affairs, Faculty, and SEMPA Defendants' unlawful conduct was left uncorrected and allowed to be furthered resulting in Plaintiff's inability to freely participate in a student organization without fear of harm.

96. Plaintiff was injured and suffered emotional distress, loss of property interest, and the deprivation of her rights in violation of MCHR, Title VI, Amendment Fourteen, and Sections 1981, 1983, 1985, and 1986. Plaintiff now seeks compensatory damages under Title VI 2000d and 2004 in the amount of $150,000 in Schmitt's official capacity. In his individual capacity, Plaintiff seeks $150, 000 in compensatory damages as allowed under MHRA, Amendment XIV, and Sections 1981, 1983, 1985, 1986, and 2004 and punitive damages and attorney fees under the same statutes, Section 1988, and Missouri's IIED and NIED claims in amounts to be determined by a jury.

## COUNT THIRTEEN:

### Defendant BRANDON BURTON, UMSL Campus and State Police Officer

The allegations set forth in the preceding paragraphs are incorporated and realleged herein.

97. COMES NOW Rodgers and realleges the same exact unlawful and concerted action and willful violation of MHRA,

Title VI, Amendment XIV, Sections 1981, 1983, 1985, 1986, and 2004 against Defendant Officer Brandon Burton as was alleged against Defendant Schmitt. As such, Plaintiff seeks the same liability for damages and monetary relief in compensatory and punitive damages in his official and individual capacities respectively as was alleged against Officer Schmitt.

## COUNT FOURTEEN:

### Defendant CHARLES GRANGER, UMSL Biology Professor, and SEMPA Faculty Advisor

The allegations set forth in the preceding paragraphs are incorporated and realleged herein.

98. While performing duties under color of law as a supervising state official and paid SEMPA faculty advisor, Defendant Charles Granger created hostile environments, breached Plaintiff's student contracts, and deprived her of her student, state, and federal rights to prevent her from equally participating in SEMPA the same as similarly situated white persons.

99. Granger willfully engaged in acts of racial discrimination, harassment, and retaliation against Plaintiff because of her race and for participating in protected activity against him and white SEMPA members. Granger's discriminatory animus was so severe and pervasive as to result in his lead charge in her immediate and unlawful impeachment and his assaulting Rodgers on the UMSL campus in plain view to prevent her from continuing to performing presidential job duties.

100. In conspiracy with state and private actors, Granger condoned, encouraged, and participated in unlawful practices aimed to deprive Rodgers of her equal opportunities, rights, services, and privileges afforded by SEMPA and the UM-System resulting in the maintenance of a discriminatory environment within the operations of SEMPA and UMSL. Granger's actions were racially motivated, harassing, retaliatory, negligent, and in breach of his duty to protect.

101. In exercising his SEMPA and state granted decision-making authority, Granger subjected Plaintiff to different pains and penalties than similarly situated whites directly causing Plaintiff's unconstitutional impeachment, membership expulsion, breach of student contracts, inter alia, the deprivation of her protected rights. As a direct result, Plaintiff suffered emotional distress, loss of property interest, and the deprivation of her rights in violation of MCHR, Title VI, Amendment Fourteen, and Sections 1981, 1983, 1985, and 1986.

102. Plaintiff now seeks compensatory damages under Title VI 2000d and 2004 in the amount of $150,000 in Granger's official capacity. In his individual capacity, Plaintiff seeks $150, 000 in compensatory damages as allowed under MHRA, Amendment XIV, and Sections 1981, 1983, 1985, 1986, and 2004 and punitive damages and attorney fees under the same statutes, Section 1988, and Missouri's Assault statute, IIED and NIED claims in amounts to be determined by a jury.

**COUNT FIFTEEN:**

**Defendant MARCEL BECHTOLDT, IT Services System Administrator, SEMPA Chief Technical Advisor, and UMSL**

**Faculty**

The allegations set forth in the preceding paragraphs are incorporated and realleged herein.

103. While serving as a paid state faculty member and SEMPA advisor, Defendant Marcel Bechtoldt performed duties under color of law that were racially motivated, harassing, retaliatory, and negligent, and directly contributed to the maintenance of a discriminatory environment within the operations of SEMPA and UMSL. Bechtoldt willfully engaged in acts of racial discrimination, harassment, and retaliation against Plaintiff because of her race and for participating in protected activity. In conspiracy with and supervision of state and private actors, Bechtoldt created hostile environments, breached Plaintiff's student contracts, and deprived her of her student, state, and federal rights to prevent her from equally participating in SEMPA the same as similarly situated white persons.

104. In exercising his SEMPA and state granted decision-making authority, Bechtoldt subjected Plaintiff to different pains and penalties than similarly situated whites directly resulting in Plaintiff's unconstitutional impeachment, membership expulsion, breach of student contracts, inter alia, the deprivation of her protected rights. As a direct result, Plaintiff suffered emotional distress, loss of property interest, and the deprivation of her rights in violation of MCHR, Title VI, Amendment Fourteen, and Sections 1981, 1983, 1985, and 1986.

105. Plaintiff now seeks compensatory damages under Title VI 2000d and 2004 in the amount of $150,000 in Bechtoldt's official capacity. In his individual capacity, Plaintiff seeks $150, 000 in compensatory damages as allowed under MHRA, Amendment XIV, and Sections 1981, 1983, 1985, 1986, and 2004 and punitive damages and attorney fees under the same statutes, Section 1988, and Missouri's IIED and NIED claims in amounts to be determined by a jury.

**COUNT SIXTEEN:**

**Defendant CRAIG ROBINSON, Supervisor of Environmental Health & Safety Dept. and SEMPA Treasurer**

The allegations set forth in the preceding paragraphs are incorporated and realleged herein.

106. In exercising his SEMPA and state granted decision-making authority, Defendant Craig Robinson performed duties under color of law that directly caused Plaintiff's unconstitutional impeachment, membership expulsion, breach of her student contracts, inter alia, the deprivation of her protected rights.

107. With malicious intent and discriminatory animus, Defendant C. Robinson 1) contributed to the maintenance of a discriminatory environment in SEMPA and on the UMSL campus, 2) conspired retaliatory action against Rodgers for engaging in protected activity, 3) harassed and held Rodgers to different standards than whites when she attempted to perform presidential duties, 4) denied her due process while performing duties under color of law,

5) created and encouraged hostile environments aimed to cause her to resign as president, 6) severed her SEMPA contracts because of her race, 7) led and facilitated her unconstitutional impeachment, inter alia, 8) commissioned and encouraged disparate treatment by others against Rodgers.

108. C. Robinson's actions were racially motivated, harassing, retaliatory, and negligent causing Plaintiff emotional distress, loss of property interest, and the deprivation of her rights in violation of MCHR, Title VI, Amendment Fourteen, and Sections 1981, 1983, 1985, and 1986.

109. Plaintiff now seeks compensatory damages under Title VI 2000d and Section 2004 in the amount of $150,000 in C. Robinson's official capacity. In his individual capacity, Plaintiff seeks $150, 000 in compensatory damages as allowed under MHRA, Amendment XIV, and Sections 1981, 1983, 1985, 1986, and 2004 and punitive damages and attorney fees under the same statutes, Section 1988, and Missouri's IIED and NIED claims in amounts to be determined by a jury.

## COUNT SEVENTEEN:

### Defendant KEITH ROBINSON, IT Systems Administrator and SEMPA Station Manager

The allegations set forth in the preceding paragraphs are incorporated and realleged herein.

110. While performing duties under color of law, Defendant Keith Robinson conspired, led, and engaged in unlawful acts of racially motivated discrimination, disparate treatment, harassment, and retaliation against Rodgers because of her race. With malicious intent to deprive and intentionally cause Rodgers emotional distress, K. Robinson led multiple conspiracies that prevented her from 1) equally participating in SEMPA the same as white persons, 2) gaining equal access to a campus facility, 3) benefiting from her student contracts, inter alia, 4) benefiting from equal protections from hostile environments.

111. In exercising his SEMPA and state granted decision-making authority, K. Robinson performed duties under color of law that directly caused Plaintiff's unconstitutional impeachment, membership expulsion, breach of her student contracts, inter alia, the deprivation of her protected rights. K. Robinson's actions were racially motivated, harassing, retaliatory, and negligent, and directly contributed to the maintenance of a discriminatory environment within SEMPA. This caused Plaintiff emotional distress, loss of property interest, and the deprivation of her rights in violation of MCHR, Title VI, Amendment Fourteen, and Sections 1981, 1983, 1985, and 1986.

112. Plaintiff now seeks compensatory damages under Title VI 2000d and 2004 in the amount of $150,000 in K. Robinson's official capacity. In his individual capacity, Plaintiff seeks $150, 000 in compensatory damages as allowed under MHRA, Amendment XIV, and Sections 1981, 1983, 1985, 1986, and 2004 and punitive damages and attorney fees under the same statutes, Section 1988, and Missouri's IIED and NIED claims in amounts to be determined by a jury.

**COUNT EIGHTEEN:**

**Defendant Ethan Chou, Student Court Justice**

The allegations set forth in the preceding paragraphs are incorporated and realleged herein.

113. While an UMSL student, Defendant Ethan Chou was negligently appointed by the state to adjudicate Rodgers' serious racial discrimination grievances and performed duties under color of law. In exercising his state granted decision-making authority, Chou furthered those racially discriminatory and retaliatory actions Rodgers complained of and that were conspired by Faculty and SEMPA Defendants. Chou's decision-making was racially motivated, negligent, overtly biased, and grossly deviated from standard Student Court procedures. His decision making was so shocking and outrageous as to intentionally cause Plaintiff's second unconstitutional impeachment, further breach of her student contracts, and greater deprivation of her protected rights.

114. As Chou was failed to adjudicate Rodgers' many discrimination claims, the grant of a Student Court hearing did not constitute a grant of a fair and equitable due process. As a direct result, Plaintiff's grievances were left unaddressed causing her to suffer emotional distress, loss of property interest, inter alia, the deprivation of her rights.

115. Chou's actions violated MHRA, Title VI, Amendment Fourteen, and Sections 1981, 1983, 1985, 1986. Thus, Plaintiff now seeks compensatory damages for her injuries under Title VI 2000d and 2004 in the amount of $150,000 in Chou's official capacity. In his individual capacity, Plaintiff seeks $150,000 in compensatory damages as allowed under MHRA, Amendment XIV, and Sections 1981, 1983, 1985, 1986, and 2004 and punitive damages and attorney fees under the same statutes, Section 1988, and Missouri's IIED and NIED claims in amounts to be determined by a jury.

**COUNT NINETEEN:**

**Defendant TIFFANY AXTON, UMSL Student, SEMPA V.P, and SEMPA President**

The allegations set forth in the preceding paragraphs are incorporated and realleged herein.

116. While serving as a top authorized official over the state's radio facility, Defendant Tiffany Axton willfully engaged in racially discriminatory conduct that prevented Rodgers from equally participating in SEMPA the same as similarly situated white persons. Because of Plaintiff's race and her known participation in federally protected activity against white Faculty and SEMPA members, Axton allowed the creation of hostile environments and conspired retaliatory actions against Rodgers' to prevent her from the ability to benefit from or perform in her presidential role. Acting unlawfully and in bad faith, Axton replaced Rodgers as SEMPA president without just cause or necessity.

117. Exercising her SEMPA and state granted decision-making authority, Axton performed duties under color of law

that directly caused Plaintiff's unconstitutional impeachment, membership expulsion, breach of her student contracts, inter alia, the deprivation of Rodgers' protected rights. Axton's actions and inactions were racially motivated, harassing, retaliatory, and negligent, and directly contributed to the maintenance of a discriminatory environment within SEMPA. This intentionally caused Plaintiff emotional distress, loss of property interest, and the deprivation of her rights in violation of MCHR, Title VI, Amendment Fourteen, and Sections 1981, 1983, 1985, and 1986.

118. Plaintiff now seeks compensatory damages under Title VI 2000d and 2004 in the amount of $150,000 in Axton's official capacity. In her individual capacity, Plaintiff seeks $150, 000 in compensatory damages as allowed under MHRA, Amendment XIV, and Sections 1981, 1983, 1985, 1986, and 2004 and punitive damages and attorney fees under the same statutes, Section 1988, and Missouri's IIED and NIED claims in amounts to be determined by a jury.

## COUNT TWENTY:

### Defendant RYAN ORDWAY, General Manager of UMSL TV, UMSL Student, and SEMPA Member

The allegations set forth in the preceding paragraphs are incorporated and realleged herein.

119. Defendant Ryan Ordway engaged in racially discriminatory conduct that created multiple hostile environments that prevented Rodgers from equally participating in and benefiting from SEMPA the same as white persons.

120. After Plaintiff was engaged in federally protected activity against him, Ordway immediately retaliated and planned harassing, retaliatory, and other unlawful acts in conspiracy with state and private actors. Ordway's actions intentionally deprived her of her student, state, and federally protected rights.

121. Exercising his SEMPA and state granted decision-making authority, Ordway performed duties under color of law that directly caused Plaintiff's unconstitutional impeachment, membership expulsion, inter alia, breach of her student contracts. Ordway's actions were racially motivated, harassing, retaliatory, and negligent, and served to intentionally cause Plaintiff emotional distress, loss of property interest, and the deprivation of her rights in violation of MCHR, Title VI, Amendment Fourteen, and Sections 1981, 1983, 1985, and 1986.

122. Plaintiff was injured and seeks compensatory damages under Title VI and Section 2004 in the amount of $150,000 in Ordway's official capacity. In his individual capacity, Plaintiff seeks $150,000 in compensatory damages as allowed under MHRA, Amendment XIV, and Sections 1981, 1983, 1985, 1986, and 2004 and punitive damages and attorney fees under the same statutes, Section 1988, and Missouri's IIED and NIED claims in amounts to be determined by a jury.

## COUNT TWENTY-ONE:

### Defendant JOHN EDWARDS, the U Radio Sports Director, UMSL Student, and SEMPA member

The allegations set forth in the preceding paragraphs are incorporated and realleged herein.

123. Defendant John Edwards enjoined in a conspiracy with Faculty and SEMPA Defendants to intentionally deprive Plaintiff of the equal opportunity to participate in and benefit from the SEMPA organization as an elected president because of her race. As a direct and proximate result of Edwards' willful malice, discriminatory animus, and conspired retaliatory actions, Rodgers suffered a deprivation of her protected student, state, and federally rights.

124. Exercising his SEMPA and state granted decision-making authority, Edwards performed duties under color of law that directly caused Plaintiff's unconstitutional impeachment, membership expulsion, inter alia, breach of her student contracts. Edward's actions were racially motivated, harassing, retaliatory, and negligent, and served to intentionally cause Plaintiff emotional distress, loss of property interest, and the deprivation of her rights in violation of MCHR, Title VI, Amendment Fourteen, and Sections 1981, 1983, 1985, and 1986.

125. Plaintiff was injured and seeks compensatory damages under Title VI 2000d and 2004 in the amount of $150,000 in Edward's official capacity. In his individual capacity, Plaintiff seeks $150, 000 in compensatory damages as allowed under MHRA, Amendment XIV, and Sections 1981, 1983, 1985, 1986, and 2004 and punitive damages and attorney fees under the same statutes and Section 1988 in amounts to be determined by a jury.

## COUNT TWENTY-TWO:

### Defendant STEPHEN ENGLEMEYER, SEMPA 2007 Past-President, UMSL student, and SEMPA member

The allegations set forth in the preceding paragraphs are incorporated and realleged herein.

126. Defendant Stephen Engelmeyer willfully engaged in a conspiracy with state and private actors to deprive Plaintiff of her equal right and opportunity to participate in SEMPA as president the same as white persons because of her race. His unlawful conduct directly contributed to Plaintiff's inability to equally benefit from SEMPA's and UMSL's programs, services, contracts, inter alia, places of public accommodation.

VI. Exercising his SEMPA and state granted decision-making authority, Engelmeyer performed duties under color of law that directly caused Plaintiff's unconstitutional impeachment, membership expulsion, inter alia breach of her student contracts. Engelmeyer's actions were racially motivated, harassing, retaliatory, and negligent, and served to intentionally cause Plaintiff emotional distress, loss of property interest, and the deprivation of her rights in violation of MCHR, Title VI, Amendment Fourteen, and Sections 1981, 1983, 1985, and 1986.

127. Plaintiff was injured and seeks compensatory damages under Title VI 2000d and 2004 in the amount of $150,000 in Engelmeyer's official capacity. In his individual capacity, Plaintiff seeks $150, 000 in compensatory damages as allowed under MHRA, Amendment XIV, and Sections 1981, 1983, 1985, 1986, and 2004 and punitive damages and attorney fees under the same statutes, Section 1988, and Missouri's IIED and NIED claims in amounts to be

determined by a jury.

VII.    CONCLUSION

128. This case provides substantial evidence that the Board of Curators and SEMPA have created, encouraged, facilitated, and maintained a racially discriminatory environment and institutionalize customs that deprived Plaintiff of her equal rights, privileges, and accesses in SEMPA's and the UM-System's programs, services, and places of public accommodation. Clear and convincing evidence show that though the UM-System has promulgated an anti-discrimination policy that may appear neutral on its face, it is ineffective, not followed, never monitored or supervised. Instead, it substituted by a firm custom that systematically discourages and prevents racial discrimination complaints filed by African Americans. Thus, having a disparate impact on the class.

VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants in her favor as follows:

129. An award of compensatory and non-pecuniary damages against the UM-System's Board of Curators totaling $5,500,000 (@ $250,000 per 22 case Defendants in their official capacities) for their own violations and their twenty one (21) other Defendant state actors' joint and several liability in the deliberate maintenance of a discriminatory environment and commissioned acts of racial discrimination, retaliation, and negligence in violation of Title VI 2000d and 2004.

130. An award of compensatory and punitive damages against SEMPA and all Defendant persons in their individual capacities as outlined above and allowed under MHRA, Amendment Fourteen, and Sections 1981, 1983, 1985, 1986, and 2004.

131. An award of Plaintiff's pre-judgment and post-judgment interest on any monetary award in this action; and

132. An award of attorney's and expert fees where allowed under 42 U.S.C. §1988 where they are deficient under MHRA and 42 U.S.C. Sections 1981, 1983, 1985, 1986, 2000d, and 2004.

IX. DEMAND FOR JURY TRIAL

133. Pursuant to Fed. R. Civ. P. 38(b), Plaintiff respectfully demands a trial by jury of all issues so triable.

DATED:  September 4, 2013

Respectfully Submitted,

By:

Cheri Rodgers, Pro se Litigant
23 Buckeye
St. Louis, MO 63135
Phone: (314) 397-9344
Email: RodgersCase@aol.com

## CERTIFICATE OF SERVICE

The undersigned herby certifies that a copy of the foregoing was served on Defendants by

and through the Counsel of record listed below on by electronic filing through the Circuit Court on

September 4, 2013.

BEHR, McCARTER, & POTTER, P.C.
Richard J. Behr, #39475MO
Jason W. Kinser, #53936MO
W. Dudley McCarter, #24939MO
7777 Bonhomme, Suite 1400
St. Louis, MO 63105
Phone: (314) 862-3800

DATED: September 4, 2013

By

Cheri Rodgers, Pro se Litigant
23 Buckeye
St. Louis, MO 63135
Phone: (314) 397-9344
Email: RodgersCase@aol.com