UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CHERI RODGERS,                          )
                                        )
                Plaintiff,              )
                                        )
        vs.                             )        Case No. 4:13CV1769 JAR
                                        )
UNIVERSITY OF MISSOURI BOARD OF         )
CURATORS, et al.,                       )
                                        )
                Defendants.             )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint

(ECF No. 36) and Defendants' Motion to Dismiss or in the Alternative Strike Plaintiff's Amended

Complaint (ECF No. 46).[1]   These matters are fully briefed and ready for disposition.

## STANDARD FOR MOTION TO DISMISS

In ruling on a motion to dismiss, the Court must view the allegations in the Complaint

liberally in the light most favorable to the plaintiff.   Eckert v. Titan Tire Corp., 514 F.3d 801, 806

(8th Cir. 2008) (citing Luney v. SGS Auto Servs., 432 F.3d 866, 867 (8th Cir. 2005)).

Additionally, the Court "must accept the allegations contained in the complaint as true and draw all

reasonable inferences in favor of the nonmoving party."   Coons v. Mineta, 410 F.3d 1036, 1039

(8th Cir. 2005) (citation omitted).   To survive a motion to dismiss, a complaint must contain

"enough facts to state a claim to relief that is plausible on its face."   Bell Atl. Corp. v. Twombly,

550 U.S. 544, 570 (2007) (abrogating the "no set of facts" standard for Fed. R. Civ. P. 12(b)(6)

found in Conley v. Gibson, 355 U.S. 41, 45–46 (1957)).   While a complaint attacked by a Rule

---

[1] Although other motions are currently pending, those motions are denied as moot because the
Court's decision on the motions to dismiss resolves the entire case.

12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555; Huang v. Gateway Hotel Holdings, 520 F. Supp. 2d 1137, 1140 (E.D. Mo. 2007).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." Id. Second, the Court must determine whether the complaint states a plausible claim for relief. Id. at 679. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." Id. The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." Id. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether the plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred. Id. at 680-82.

**BACKGROUND**

Plaintiff Cheri Rodgers ("Plaintiff") brings this lawsuit to address her impeachment as president of the Student Electronic Media Association Organization ("SEMPA"), two months following her election to the position. A full background of underlying acts in this case can be found at Rodgers v. University of Missouri Board of Curators et al. (Rodgers I), 4:11cv515, ECF No. 82 (Sept. 4, 2012).

The Court reviews the Complaint and the Amended Complaint pursuant to the Motion to Dismiss Plaintiff's Complaint (ECF No. 36) and Defendants' Motion to Dismiss or in the Alternative Strike Plaintiff's Amended Complaint (ECF No. 46). The Court also reviews Plaintiff's Complaint and Amended Complaint to determine if they are patently meritless:

> A court does not obtain subject-matter jurisdiction just because a Plaintiff raises a federal question in his or her complaint. If the asserted basis of federal jurisdiction is patently meritless, then dismissal for lack of jurisdiction is appropriate. Because this is a facial rather than a factual challenge to jurisdiction, [the court] determine[s] whether the asserted jurisdictional basis is patently meritless by looking to the face of the complaint and drawing all reasonable inferences in favor of the Plaintiff.

Biscanin v. Merrill Lynch & Co., Inc. 407 F.3d 905, 907 (8th Cir. 2005) (citations omitted).

## DISCUSSION

### I. Plaintiff's Complaint is Barred by Res Judicata

Defendants argue that res judicata bars this case. "The principle behind the doctrine of res judicata is that '[f]inal judgment on the merits precludes the relitigation of a claim on any grounds raised before or on any grounds which could have been raised in the prior action.'" Torrey v. JP Morgan Chase Bank, 4:13CV1611 CEJ, 2014 WL 1648791, at *3 (E.D. Mo. Apr. 24, 2014)(quoting Poe v. John Deere Co., 695 F.2d 1103, 1105 (8th Cir. 1982)). In order for a claim to be precluded under the doctrine of res judicata, the following five elements must be satisfied: (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); (4) both suits are based upon the same claims or causes of action; and (5) the party against whom res judicata is asserted must have had a full and fair opportunity to litigate the matter in the proceeding that is to be given preclusive effect. Rutherford v. Kessel, 560 F.3d 874, 877 (8th Cir. 2009).

Plaintiff asserts that her claim is not barred by the doctrine of res judicata because "the

Court did not fully adjudicate Plaintiff's Complaint" when the Court dismissed her Second Amended Complaint in the prior lawsuit. (ECF No. 45-1 at 2).

Here, the Court previously fully adjudicated all of Plaintiff's claims regarding her impeachment from SEMPA and dismissed any and all claims that Plaintiff attempted to assert. (4:11cv515, ECF Nos. 82-83)(dismissing Plaintiff's claims for relief under 42 U.S.C. §§1981, 1983, 1985, 1986, as well as Plaintiff's state law claims for intentional infliction of emotional distress). Plaintiff asserts that the Court never fully litigated her Missouri Human Rights Act ("MHRA") claim.[2]   As noted by the Eighth Circuit, "An involuntary dismissal under Rule 41(b) is with prejudice unless stated otherwise by the district court." Luney v. SGS Auto. Servs., Inc., 432 F.3d 866, 867 (8th Cir. 2005). Rule 41(b) provides that "[u]nless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision ... operates as an adjudication on the merits."

A review of this Court's prior dismissal orders confirms that Plaintiff's prior Complaint was dismissed with prejudice for failing to state a claim and constituted a final judgment on the merits. See Ritchie v. St. Louis Jewish Light, 630 F.3d 713, 717 (8th Cir. 2011)(quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'")). Because a dismissal under Rule 12(b)(6) is considered a dismissal on the merits, the dismissal is with prejudice and has a claim preclusive effect on future litigation. See Astron Indus. Associates, Inc. v. Chrysler Motors Corp., 405 F.2d 958, 960 (5th Cir. 1968)("It is clear that a stipulation of dismissal with prejudice, or, for that matter, a dismissal with prejudice at any stage of a judicial proceeding, normally constitutes a final judgment on the merits which bars a later suit on the same cause of action.").

---

[2] The Court does not believe that Plaintiff raised a MHRA claim in her prior lawsuit.

On August 31, 2011, the Court entered an order dismissing defendants Ethan Chou, Craig Robinson, Keith Robinson, Tiffany Axton, Ryan Ordway, Stephen Engelmeyer, and John Edwards. (Rodgers v. University of Missouri Bd. of Curators, Case No. 4:11cv515 JAR, ECF Nos. 50-51). On October 14, 2011, Defendants filed their Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim Upon Which Relief May Be Granted. (Id., ECF No. 71). Defendants' Motion sought a dismissal of each and every count in Plaintiff's Second Amended Complaint with prejudice. (Id., ECF No. 71). In a twenty-two page opinion, this Court **GRANTED** that Motion and dismissed Plaintiff's Second Amended Complaint, in full, on the merits. See Id., ECF No. 82 ("**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim Upon Which Relief May Be Granted [71] is **GRANTED**."); id., ECF No. 83 ("**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Plaintiff's Complaint is **DISMISSED**."). On October 2, 2012, Plaintiff filed a "Motion to Reconsider Court's August 31, 2011 Order Dismissing Case Defendants" (id., ECF No. 84) and a "Motion to Reconsider Court's September 4, 2011 Order Dismissing Case for Failure to State a Claim" (id., ECF No. 86). On October 19, 2012, the Court entered an Order denying Plaintiff's motions for reconsideration and stating that "**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reconsider Court's August 31, 2011 Order Dismissing Case Defendants [84] and Plaintiff's Motion to Reconsider Court's September 4, 2012 Order Dismissing Case for Failure to State a Claim [86] are **DENIED**." (Id., ECF No. 91).

As demonstrated above, Defendants sought a dismissal of Plaintiff's entire Second Amended Complaint based upon Plaintiff's inability to state a claim against any Defendants. The Court addressed each and every count of Plaintiff's Second Amended Complaint in their Motion to Dismiss. This Court granted Plaintiff's Motion to Dismiss for Failure to State a Claim in its entirety, thereby dismissing Plaintiff's entire Second Amended Complaint. Plaintiff clearly was

aware that this Court dismissed her entire Second Amended Complaint because she filed a motion with this Court asking it to reconsider the dismissal of her entire complaint. <u>Rodgers v. University of Missouri Bd. of Curators</u>, Case No. 4:11cv515 JAR, ECF No. 86). The Court denied this Motion and her case was ripe for appeal at that time, but she chose not to appeal. <u>See</u> Fed.R.App.P. 4(a)(1); Fed.R.App.P. 3(c)(1)(B) (notice of appeal must "designate the judgment, order, or part thereof being appealed"). Plaintiff has now waited nearly a year and filed a new Complaint, which includes the same parties, allegations and facts alleged in her prior complaint and lawsuit. The parties here are clearly in privity. The earlier cause of action is the same cause now sued upon such that this action is barred by the doctrine of res judicata. <u>See</u> <u>Astron Indus. Associates, Inc.</u>, 405 F.2d at 960-61. Pursuant to federal law, Plaintiff is barred from reasserting these claims or any other claims that arose from the same set of facts. Therefore, the Court finds that Plaintiff's current Complaint must be dismissed with prejudice because Plaintiff is precluded from reasserting the allegations contained therein under the doctrine of res judicata and because Plaintiff fails to state a claim for which relief may be granted.

II.   **Plaintiff's Complaint and Amended Complaint Fail to State a Claim Upon Which Relief Can Be Granted**

Even if Plaintiff's Complaint were not barred by res judicata, the Court finds that Plaintiff fails to state a claim in the instant litigation on each and every one of her claims as a matter of law. In her Complaint, Plaintiff formulaically purports to allege claims for violation of the MHRA, "state law torts", Title VI 2000d and 2004, sections 1981, 1983, 1985, 1986, and 1988. (Complaint, ¶¶52, 55, 59, 63, 72, 76, 80, 84, 88, 91, 96, 97, 102, 105, 109, 112, 115, 118, 122, 125, 127; Amended Complaint, ¶¶40 (asserting that Defendants violated the Fourteenth Amendment Due Process and Equal Protection Clauses, 42 U.S.C. §§1981, 1983, 1985, 1986, 1988, Title VI 2000(d) et seq., and

2004, the Missouri Human Rights Act, and other state torts). These claims all fail as a matter of law

### A. Missouri Human Rights Act (MHRA)

For the first time, Plaintiff purports to allege a cause of action under the MHRA for race discrimination based upon her wrongful termination as President of SEMPA.

Before a plaintiff can file a claim under the MHRA, the plaintiff must file a charge with the Missouri Commission on Human Rights (MCHR) and obtain a right-to-sue letter from the MCHR. Section 213.111.1, R.S. Mo. Plaintiff obtained her Right to Sue Letter from the MCHR in March 2011. Plaintiff asserts that she alleged a MHRA claim in her original complaint (ECF No. 45-1), but she does not cite to any portion of her original complaint in support of that allegation and the Court finds that her original complaint is devoid of any such allegation. See 4:11cv515, ECF No. 1-1. Likewise, a review of Plaintiff's Second Amended Complaint in the first litigation is devoid of any mention of the MHRA. (ECF No. 44). Although Plaintiff states that she was provided a Right to Sue letter, she does not state that she pursued claims under the MHRA. (ECF No. 44 at 40-41). The Court dismisses Plaintiff's MHRA claim as untimely because it was not filed within ninety days of receiving her right to sue letter. Hill v. John Chezik Imports, 797 S.W.2d 528, 531 (Mo. Ct. App. 1990) (dismissing MHRA claim as untimely).

### B. Title VI

Title VI of the Civil Rights Act of 1964 prohibits race discrimination in any program receiving federal funds:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d (1982).[3]  Schools accepting federal financial assistance must comply with the requirements of Title VI.  Radcliff v. Landau, 883 F.2d 1481, 1483 (9th Cir. 1989); Lau v. Nichols, 414 U.S. 563, 566-67 (1974).   Under the regulations adopted by the Department of Education,[4]  "[e]very application for Federal financial assistance to which this part applies ... and every application for Federal financial assistance to provide a facility shall, as a condition to its approval and the extension of any Federal financial assistance pursuant to the application, contain or be accompanied by an assurance that the program will be conducted or the facility operated in compliance with all requirements imposed by or pursuant to this part."   34 C.F.R. §100.4. The Act provides for a broad concept of "program or activity" by adding to Title VI an explicit definition for that phrase:

> For the purposes of this subchapter, the term "program or activity" and the term "program" mean all the operations of --
> . . .
> (2)(A) a college, university, or other postsecondary institution, or a public system of higher education .
> ...
> any part of which is extended Federal financial assistance.

42 U.S.C. § 2000d-4a.

Receipt of federal financial assistance by any student or portion of a school thus subjects the entire school to Title VI coverage.  Radcliff, 883 F.2d at 1483; see Scarlett v. Sch. of the Ozarks, Inc., 780 F. Supp. 2d 924, 933 (W.D. Mo. 2011)("Congress enacted the Civil Rights Restoration Act of 1987 to make clear that the term 'program or activity' includes all of an

---

[3]This provision is also referred to as Section 601 of Title VI.

[4]"Each Federal department and agency which is empowered to extend Federal financial assistance to any program or activity, by way of grant, loan, or contract other than a contract of insurance or guaranty, is authorized and directed to effectuate the provisions of section 2000d of this title with respect to such program or activity by issuing rules, regulations, or orders of general applicability which shall be consistent with achievement of the objectives of the statute authorizing the financial assistance in connection with which the action is taken."   42 U.S.C. §2000d-1.

entities' operations, thus any university receiving federal funds may not discriminate against any person in any of its programs on the basis of race, color, or national origin.")(citing DeVargas v. Mason & Hanger-Silas Mason Co., Inc., 911 F.2d 1377, 1383-84 (10th Cir. 1990)).  Private individuals may sue to enforce § 601 of Title VI and obtain both injunctive relief and damages. Alexander v. Sandoval, 532 U.S. 275, 279 (2001).  Thus, the Court must look at Plaintiff's claims against each defendant to determine if she states a claim under Title VI.

## 1. Individual Defendants

"[I]ndividuals cannot be held personally liable under Title VI." Ajiwoju v. Cottrell, No. 04-0715-CV-W-FJG, 2005 U.S. Dist. LEXIS 33422, at *3-4 (W.D. Mo. May 2, 2005); Shotz v. City of Plantation, 344 F.3d 1161, 1170 (11th Cir. 2003)("By extension, the text of Title VI also precludes liability against those who do not receive federal funding, including individuals"); Buchanan v. City of Bolivar, 99 F.3d 1352, 1356 (6th Cir. 1996)("Plaintiff's claim also fails because she asserts her claim against Lawson and Weaver and not against the school, the entity allegedly receiving the financial assistance"); N.J. Sand Hill Band of Lenape & Cherokee Indians v. Corzine, No. 09-683 (KSH), 2010 U.S. Dist. LEXIS 66605, at *60 (D.N.J. June 30, 2010)("The Court agrees that individuals are not the proper defendants in a Title VI case."); Gomiller v. Dees, No. 4:06CV33-D-B, 2007 U.S. Dist. LEXIS 23230, at *11 (N.D. Miss. Mar. 28, 2007)("the Court finds that individual liability does not lie in Title VI"); Steel v. Alma Public School Dist., 162 F. Supp.2d 1083, 1085 (W.D. Ark. 2001)("[I]n the Title IX context, that school officials may not be sued in their individual capacities. .... As Title IX and Title VI are parallel to each other and operate in the same manner.").[5]  That is, federal courts generally have held that "'the proper defendant in a Title VI case is an entity rather than an individual'" Langadinos v.

_____

[5]See Barnes v. Gorman, 536 U.S. 181, 185 (2002) ("the Court has interpreted Title IX consistently with Title VI").

Appalachian Sch. of Law, No. 1:05CV00039, 2005 U.S. Dist. LEXIS 20958, at *17 (W.D. Va. Sept. 25, 2005)(quoting Farmer v. Ramsay, 41 F. Supp. 2d 587, 592 (D. Md. 1999)).   Based upon the overwhelming case law declining to recognize a Title VI cause of action against an individual, the Court finds that Plaintiff's Title VI claims against the individuals in their individual capacities fail as a matter of law and are dismissed.

## 2.  Curators and SEMPA

"To establish a prima facie case of discrimination under Title VI, the plaintiff must show (1) that the defendant is receiving federal funds, (2) that the plaintiff was discriminated against, and (3) the plaintiff's race, color, or national origin was the motive for the discriminatory conduct."   Scarlett, 780 F. Supp. 2d at 933-934 (citing Tolbert v. Queens Coll., 242 F.3d 58, 69 (2d Cir. 2001); Jackson v. Conway, 476 F. Supp. 896, 903 (E.D. Mo. 1979); Thompson v. Bd. of the Special School Dist. No. 1, 144 F.3d 574, 581 (8th Cir. 1998)).

The Court finds that Plaintiff fails to state a claim against SEMPA and the Curators of the University of Missouri System ("Curators").   "[R]ather than asserting a claim alleging that [SEMPA's or the Curators'] policies or general practices are discriminatory, [Plaintiff] seeks to hold [SEMPA and the Curators] accountable for the acts of [their] employees."   Goonewardena v. New York, 475 F. Supp. 310, 328 (S.D.N.Y. 2007).   For example, Plaintiff alleges that SEMPA's "authorized members violated MHRA, Title VI, federal laws, and the university's anti-discrimination policies subjecting Plaintiff to different pains and penalties and knowingly depriving her constitutional and civil rights."   (Amended Complaint, ¶162).   SEMPA and the Curators cannot be held vicariously liable under Title VI for the actions of individual actors. Santos, 2009 U.S. Dist. LEXIS 106143, at *21; Earl v. Fresno Unified Sch. Dist. Bd. of Educ., No. 1:11-CV-01568-LJO-GSA, 2012 U.S. Dist. LEXIS 64537, at *11-12 (E.D. Cal. May 7, 2012); Vouchides v. Houston Cmty. College Sys., H-10-2559, 2011 U.S. Dist. LEXIS 112609, at

*17-18 (S.D. Tex. Sept. 30, 2011); <u>Manuel v. City of Bangor</u>, No. 09-CV-339-B-W, 2009 U.S. Dist. LEXIS 98031, at *11-12 (D. Me. Oct. 21, 2009); <u>Hurd v. Del. State Univ.</u>, No. 07-117-MPT, 2008 U.S. Dist. LEXIS 73448, at *20 (D. Del. Sept. 25, 2008); <u>Goonewardena</u>, 475 F. Supp. 2d at 328. "An institution is only liable if it intentionally harassed or discriminated on the basis of race or nationality." <u>Hurd</u>, 2008 U.S. Dist. LEXIS 73448, at *20. Because Plaintiff alleges only vicarious liability against SEMPA and the Curators, her Title VI claims against them fail to state a claim and are dismissed.

In the alternative, the Court also holds that Plaintiff does not identify a specific policy or procedure that is the basis of her Title VI claim against SEMPA and the Board of Curators. Plaintiff broadly states that "[t]he Board of Curators['] actions, inactions, lack of supervisor, inter alia, ineffective anti-discrimination policies directly caused the maintenance of a racially discriminatory environment on its UMSL campus that had a disparate impact on African Americans who field racial discrimination grievances." (Amended Complaint, ¶158). "Title VI prohibits only intentional discrimination." <u>Mumid v. Abraham Lincoln High Sch.</u>, 618 F.3d 789, 794 (8th Cir. 2010). The only anti-discrimination policy identified by Plaintiff in her Amended Complaint is from an email from UMSL's Chief Diversity Officer stating that "Discrimination, retaliation, and harassment based on race are prohibited by the University's Equal Opportunity Policy." (ECF No. 40 ¶129). Plaintiff fails to allege how this anti-discrimination policy in any way had a discriminatory or retaliatory effect on her in violation of Title VI. Therefore, the Court finds that Plaintiff fails to state a claim under Title VI against the Curators or SEMPA as a matter of law.

### 3. Disparate Impact Claim

Finally, to the extent that Plaintiff attempts to allege a disparate impact claim under Title VI, Plaintiff fails to state a claim.[6] The Supreme Court has held that there is no private right of action to enforce disparate-impact regulations promulgated under Title VI. Alexander v. Sandoval, 532 U.S. 275, 280-81 (2001)("[I]t is ... beyond dispute ... that § 601 prohibits only intentional discrimination.... What we said in Alexander v. Choate [469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985)] is true today: 'Title VI itself directly reaches only instances of intentional discrimination.'"); Mumid v. Abraham Lincoln High Sch., 618 F.3d 789, 794 (8th Cir. 2010)("Title VI prohibits only intentional discrimination. Proof of disparate impact is not sufficient."). Therefore, any Title VI disparate impact claim fails as a matter of law.

## C. §§1981, 1983, 1985, 1986, Fourteenth Amendment and State Law Claims against the Individual Defendants in their "Official Capacities," the Curators of the University of Missouri System, and SEMPA

In her Complaint, Plaintiff purports to allege claims against the Curators and SEMPA discriminated against her in violation of Sections 1981, 1983, 1985, 1986, the Fourteenth Amendment and state law claims. As this Court held previously, Plaintiff's §§1981, 1983, 1985, 1986, Fourteenth Amendment and state law claims against the Curators, SEMPA, and the individual defendants in their "official capacities" are barred by sovereign immunity.

"The sovereign immunity of the States recognized in the Eleventh Amendment bars any suit brought in federal court against a state or state agency, regardless of the nature of the relief sought, unless Congress has abrogated the states' immunity or a state has consented to suit or waived its immunity." Tinzie v. Ark. Dep't of Workforce Servs., No: 4:11CV00683 SWW,

---

[6] Plaintiff asserts that she is bringing a disparate impact claim pursuant to "Section 2004" and 42 U.S.C. §2004. See ECF No. 45-1.[6] The Court assumes that Plaintiff is trying to bring a disparate impact claim pursuant to the Civil Rights Act of 2004. The Civil Rights Act of 2004 provides that "[t]his section amends Title VI, Title IX, and the Age Discrimination Act of 1975 to allow suits in state and federal courts by persons who suffer discrimination by recipients of federal funds." Sec. 102. Thus, the Court has addressed this disparate impact claim under Title VI.

2012 U.S. Dist. LEXIS 68313, at *6 (E.D. Ark. May 16, 2012)(citing <u>Seminole Tribe v. Florida</u>, 517 U.S. 44, 74, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996); <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984); <u>Edelman v. Jordan</u>, 415 U.S. 651, 663, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974)).[7]  "In addition to barring all claims brought directly against a state or state agency, the Eleventh Amendment protects state officials sued in their official capacities from all claims, with the exception of certain claims for prospective, equitable relief."  <u>Tinzie</u>, 2012 U.S. Dist. LEXIS 68313, at *6-7 (citing <u>Murphy v. Arkansas</u>, 127 F.3d 750, 754 (8th Cir. 1997)).

To the extent that Plaintiff alleges claims under §§1981, 1983, 1985, 1986, Fourteenth Amendment and state law claims against the Curators, SEMPA and the individual Defendants in their "official capacities," those claims are barred by sovereign immunity.  See <u>Sallis v. Univ. of Minn.</u>, 322 F. Supp. 2d 999, 1005 (D. Minn. 2004)  ("Because the University is an instrumentality of the State, <u>see</u> <u>Treleven v. University of Minnesota</u>, 73 F.3d 816, 818-19 (8th Cir. 1996), the § 1981 claim is barred by the Eleventh Amendment, <u>see</u> <u>Egerdahl v. Hibbing Cmty. Coll.</u>, 72 F.3d 615, 618-19 (8th Cir. 1995)."); <u>Jacobsen v. DOT</u>, 332 F. Supp. 2d 1217, 1235 (N.D. Iowa 2004) (doctrine of sovereign immunity precludes plaintiff's claims under 42 U.S.C. § 1983 against the state defendants in their official capacities); <u>Begun v. State Bd. of Registration for Healing Arts</u>, 531 F. Supp. 955, 956 (E.D. Mo. 1982)(the immunity provided by the Eleventh Amendment has not been abrogated by 42 U.S.C. § 1983 or by 42 U.S.C. § 1985);

---

[7]The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

see also § 537.600 R.S.Mo.(2012)(the State of Missouri has not consented to waive its sovereign immunity).

Likewise, the fact that Congress enacted Title VI does not waive sovereign immunity with respect to the federal civil rights acts. See Amended Complaint, ¶42 (noting that the "Eleventh Amendment provides that any state entity that receives federal funding has 'voluntarily' waived its sovereign immunity protection under Title VI and may be held liable in suit for acts of intentional racial discrimination occurring in its state operations and by authorized official and private actors."); Martin v. Clemson Univ., 654 F. Supp. 2d 410, 428 (D.S.C. 2009)("While Congress ... has secured a waiver of Eleventh Amendment immunity as a condition of Clemson's receipt of federal financial assistance condition under Titles VI and IX, ..., Congress has not overridden the States' immunity with respect to the plaintiff's claims under 42 U.S.C. §§ 1981, 1983, 1985 or 1986, nor has South Carolina consented to suit in federal court on these or any of the plaintiff's state law claims.")(internal citations omitted). Thus, the Court finds that, to the extent that Plaintiff alleges any causes of action under §§1981, 1983, 1985, 1986, Fourteenth Amendment and State Law Claims against the Curators, SEMPA and the individual Defendants in their "official capacities," those claims are barred by sovereign immunity and dismissed.

**D.  Individual Capacity Claims Under §§1981, 1983, 1985, 1986**

**1.      42 U.S.C. § 1981 Claim**

To establish a right to relief under § 1981, a plaintiff must show (1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981, including the right to make and enforce contracts. Pryor v. NCAA, 288 F.3d 548, 569 (3d Cir. 2002). The standard

for establishing an "intent to discriminate on the basis of race" is identical in the Title VI and §

1981 contexts.    Id.

Plaintiff seems to allege that her election as President of SEMPA constituted a "contract."

Plaintiff states that she was elected on September 11, 2009, and "entered into a contract to serve

for one full year."    (Amended Complaint, ¶59).

Section "1981 prohibits racial discrimination in 'all phases and incidents' of a contractual

relationship[.]'" Gregory v. Dillard's, Inc., 565 F.3d 464, 468 (8th Cir. 2009)(quoting Rivers v.

Roadway Express, Inc., 511 U.S. 298, 302 (1994)).    When raised directly against a state actor,

however, a §1981 claim must be brought under §1983. Jones v. McNeese, 675 F.3d 1158, 1160,

n.1 (8th Cir. 2012)(citing Lockridge v. Bd. of Trs., 315 F.3d 1005, 1007 (8th Cir. 2003); Artis v.

Francis Howell North Band Booster Ass'n, 161 F.3d 1178, 1181 (8th Cir. 1998)).    The Court

finds that §1983 provides the vehicle for all of Plaintiff's purported §1981 claims in this case,

and her §1981 claims, therefore, are dismissed.    See Jones, 675 F.3d at 1160, n.1.

Moreover, even if the Court were to consider Plaintiff's §1981 claim, it fails as a matter

of law.   Plaintiff's allegations are essentially that Defendants discriminated against her and

treated her differently because of her race, African-American.    Plaintiff, however, does not

identify any similarly-situated individuals who Defendants treated more favorably, which dooms

her claim.   "[T]o support a claim of selective enforcement [a plaintiff] must allege purposeful

and systematic discrimination by specifying instances in which [she was] singled out for

unlawful oppression in contrast to others similarly situated."    Odom v. Columbia Univ., 906 F.

Supp. 188, 194 (S.D.N.Y. 1995)(citations omitted).    Plaintiff's Complaint presents only general

and conclusory accusations of race-based discrimination and unequal treatment, which do not

state a claim under §1981.    Id.    "A mere factual assertion of unequal treatment or

race-motivated conduct is insufficient to survive a Rule 12(b)(6) motion; instead, a plaintiff must

specifically allege the 'circumstances giving rise to a plausible inference of racially discriminatory intent.'" Id. at 195 (quoting Yusuf v. Vassar College, 35 F.3d 709, 713 (2d Cir. 1994)). Plaintiff fails to allege facts that support her bare accusations of unequal treatment.[8] Accordingly, the Court dismisses Plaintiff's §1981 claims on this basis as well.

### 2. 42 U.S.C. § 1983 Claims

The Fourteenth Amendment of the United States Constitution provides that "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In turn, 42 U.S.C. § 1983 provides a cause of action against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected" any person to the deprivation of any right protected by federal law or the United States Constitution.

Interpreting Plaintiff's claims broadly, the Court construes Plaintiff's Complaint as alleging §1983 violations based upon the Due Process and Equal Protection Clauses of the Constitution. See Clark v. Iowa State Univ., 643 F.3d 643, 644 (8th Cir. 2011)(affirming the district court's finding that "claims against State entities and their officials for due process and equal protection violations may, in fact, only be asserted under the auspices of [42 U.S.C.] § 1983.").

### a. Due Process Claims

---

[8] Plaintiff only alleges that she was replaced by "a less qualified, white female student member Defendant Tiffany Axton." Amended Complaint, ¶105; see also ¶147 ("Plaintiff was allowed to be replaced again by Axton, a less qualified white female"). Plaintiff only alleges that Axton was "treated more favorably and not required to adhere to the strict meeting requirements recently imposed on Plaintiff" but Plaintiff does not allege that this was because of her race.

"To establish a procedural due process claim pursuant to § 1983, plaintiffs must establish three elements: (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest." Hahn v. Star Bank, 190 F.3d 708, 716 (6th Cir. 1999)(citing Zinermon v. Burch, 494 U.S. 113, 125-26, 108 L. Ed. 2d 100, 110 S. Ct. 975 (1990)); Mulvenon v. Greenwood, 643 F.3d 653, 657 (8th Cir. 2011)(quoting Davenport v. Univ. of Ark. Bd. of Trs., 553 F.3d 1110, 1114 (8th Cir. 2009)("To establish a violation of procedural due process, a plaintiff must show that he has been deprived of a constitutionally protected life, liberty or property interest.").

Here, Plaintiff alleges that between October 2009 and March 2010, "Plaintiff was forced to file over 30 verbal and written complaints and grievances within nine (9) departments throughout UMSL and the UM-System[.]" (Amended Complaint, ¶37). Plaintiff, however, has not identified an interest protected by the Due Process Clause of the Constitution. Plaintiff merely alleges that she was deprived of serving as the President and as a member of SEMPA. This deprivation does not implicate, nor has Plaintiff identified, any due process interest. See Board of Curators of University of Missouri v. Horowitz, 435 U.S. 78, 82 (1978) ("To be entitled to the procedural protections of the Fourteenth Amendment, respondent must in a case such as this demonstrate that her dismissal from the school deprived her of either a 'liberty' or a 'property' interest."). Because Plaintiff lacks a constitutionally-protected interest in being the President or a member of SEMPA, she cannot establish a due process violation. See Forrester v. Bass, 397 F.3d 1047, 1054 (8th Cir. 2005) ("Only if we find a protected interest do we examine whether the deprivation of the protected interest was done in accordance with due process."); Singleton v. Cecil, 176 F.3d 419, 424 (8th Cir. 1999) (en banc) (stating that "the

possession of a protected life, liberty, or property interest is a condition precedent to any due process claim" (quotation, alterations, and citation omitted)). Accordingly, the Court dismisses Plaintiff's 14th Amendment Due Process claim as to all Defendants.[9]

In addition, even if Plaintiff stated a due process interest, the purported breach of Plaintiff's "contract" as president of SEMPA cannot constitute a Due Process Clause violation. "[A] simple breach of contract does not rise to the level of a constitutional deprivation." Dover Elevator Co. v. Arkansas State Univ., 64 F.3d 442, 446 (8th Cir. 1995)(citing Medical Laundry Serv. v. Board of Trustees of Univ. of Ala., 906 F.2d 571, 573 (11th Cir. 1990)). "[T]he assertion that any time one has an enforceable contract to which the State is a party, there is constitutionally protected property interest under that contract . . . is inconsistent with the concept of the Fourteenth Amendment." Dover Elevator Co. v. Arkansas State Univ., 64 F.3d 442, 446 (8th Cir. 1995)(citation omitted). "[I]f every breach of contract by someone acting under color of state law constituted a deprivation of property for procedural due process purposes, the federal courts would be called upon to pass judgment on the procedural fairness of the processing of a myriad of contractual claims against public entities." Blase v. City of Neosho, No. 10-03311-CV-S-JTM, 2011 U.S. Dist. LEXIS 119537, at *7 (W.D. Mo. Oct. 17, 2011)(quoting Reich v. Beharry, 883 F.2d 239, 242 (3d Cir. 1989)). See also Reich, 883 F.2d at 242 ("a wholesale federalization of state public contract law seems far afield from the great purposes of the due process clause"). Given that Plaintiff alleges only a breach of her alleged

---

[9]Although not argued to the Court, the allegations before the Court indicate that Plaintiff was afforded procedural due process sufficient to satisfy the Fourteenth Amendment. See, e.g., Horowitz, 435 U.S. at 84-85 ("Assuming the existence of a liberty or property interest, respondent has been awarded at least as much due process as the Fourteenth Amendment requires."). Plaintiff participated in mediation and presented her claims before the Student Court. It is unclear what additional due process she claims should have been provided.

presidential contract, the Court finds that Plaintiff cannot state a claim for a procedural due process violation.

### b.  Equal Protection Claims

"The Equal Protection Clause of the Fourteenth Amendment, § 1, commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws.'" Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).  "It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Id. (citing F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415 (1920)); Habhab v. Hon, 536 F.3d 963, 967 (8th Cir. 2008)(quoting Bogren v. Minnesota, 236 F.3d 399, 408 (8th Cir. 2000))("'In general, the Equal Protection Clause requires that state actors treat similarly situated people alike.'"); City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); Barstad v. Murray County, 420 F.3d 880, 884 (8th Cir. 2005).  "'State actors may, however, treat dissimilarly situated people dissimilarly without running afoul of the protections afforded by the clause.'" Habhab, 536 F.3d at 967 (quoting Bogren, 236 F.3d at 408).   In turn, § 1985(3) that no private actor may conspire with the purpose of "depriving ... any person or class of persons of the equal protection of the laws."   The Supreme Court recognizes an equal protection claim for discrimination against a "class of one." Village of Willowbrook v. Olech, 528 U.S. 562, 564, 145 L. Ed. 2d 1060, 120 S. Ct. 1073 (2000). The purpose of a class-of-one claim is "to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."   Id. It is recognized law that a class-of-one claimant may prevail by showing "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id.; see also Costello v. Mitchell Public School Dist. 79, 266 F.3d 916, 921 (8th Cir. 2001).

Broadly, Plaintiff alleges that "[e]ach of the 20 individual defendants contributed to a conspiracy that prevented the furtherance of Plaintiff's racial discrimination claims and denied her access to due process privileges, protections and campus services normally granted and that are available in all UM-System racial discrimination claims [and, as a result,] Plaintiff was deprived of the equal opportunity to participate in and benefit from federally funded student programs, activities, services, and places of public accommodations the same as white persons." (Amended Complaint, ¶39); see also Amended Complaint, ¶28 (Plaintiff alleges that she was subjected to disparate treatment by SEMPA's two faculty advisors and several white SEMPA members and, as a result, "she was denied equal access, privileges, training, and decision-making authority normally granted to incoming white presidents"). Plaintiff, as a threshold matter, must demonstrate Defendants treated her less favorably than similarly-situated members of SEMPA based upon Plaintiff's race. Habhab, 536 F.3d at 967; Bogren, 236 F.3d at 408. As previously discussed, Plaintiff fails to do this. See footnote no. 8. For this same reason, even if Plaintiff's Complaint is construed as asserting a "class of one" violation, Plaintiff does not state a claim. Plaintiff, therefore, does not state a claim under the Equal Protection Clause and it is dismissed.

In addition, Plaintiff's broad and conclusory allegations are insufficient to demonstrate an equal protection claim. See, e.g., Amended Complaint, ¶156 ("The existence of a university-wide racially discriminatory, harassing, retaliatory and unjust pattern and practice of the deprivation of rights of African-American students was therefore evident and confirmed warranting this suit."). Plaintiff has not alleged, other than in formulaic and legalistic terms any violation of equal protection that caused her injury.

Finally, the Court holds that Plaintiff's Amended Complaint fails to state a claim under equal protection simply based upon her termination as President of SEMPA. Based upon her own allegations, Plaintiff was not denied the opportunity to participate in the SEMPA

organization. She merely was removed as President of that organization by other members of that organization, allegedly based upon her race. Plaintiff cannot state a claim for equal protection based upon her removal as President of SEMPA when she clearly was able to participate in that organization.

With respect to SEMPA and the Curators,[10] the Court also finds that Plaintiff fails to state a claim because she has not alleged a policy or custom that violated the law and caused her injury. See Artis v. Francis Howell North Band Booster Ass'n, 161 F.3d 1178, 1181 (8th Cir. 1998). To be liable, Plaintiff must prove that SEMPA's or the Curator's "policy or custom was the moving force behind the constitutional violation." Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999)(quotation and citation omitted). "A 'policy,' for purposes of § 1983, is 'an official policy, a deliberate choice of a guiding principle or procedure made by an official with authority.'" Gardner v. Corr. Med. Servs., No. 5:12CV00177 JMM/BD, 2012 U.S. Dist. LEXIS 87270, at *4 (E.D. Ark. May 24, 2012)(quoting Mettler, 165 F.3d at 1204). "'Custom' means a 'persistent, widespread pattern of unconstitutional conduct of which officials have notice and subsequently react with deliberate indifference or tacit authorization.'" Gardner, 2012 U.S. Dist. LEXIS 87270, at *5 (quoting Johnson v. Outboard Marine Corp., 172 F.3d 531, 536 (8th Cir. 1999)).

Here, Plaintiff fails to allege a policy or custom that was the moving force behind the violation of her constitutional rights, as required to state a claim under §1983. The only policy identified by Plaintiff in her Amended Complaint is the university's anti-discrimination policy from an email from UMSL's Chief Diversity Officer that states "Discrimination, retaliation, and harassment based on race are prohibited by the University's Equal Opportunity Policy." (ECF

---

[10]The Court dismissed the §1983 claims against SEMPA and the Curators on qualified immunity grounds, and this provides another basis for dismissing the §1983 claim against these defendants.

No. 40 ¶129). Plaintiff has not alleged how this anti-discrimination policy violated her constitutional rights. Plaintiff has not made a prima facie §1983 equal protection claim against SEMPA or the Curators, and the Court dismisses those claims.

### 2. 42 U.S.C. §§ 1985, 1986 Claims

Title 42 U.S.C. § 1985 grants a civil cause of action for damages caused by various types of conspiracies aimed at injuring a person in his/her person or property, or denying him/her a Federal right or privilege. At best, Plaintiff attempts to assert a cause of action under §1985(3) for conspiracy to deprive a person of rights and privileges. To show a civil rights conspiracy under §1985(3), Plaintiff must prove: (1) the defendants conspired, (2) with the intent to deprive them, either directly or indirectly, of equal protection of the laws, or equal privileges and immunities under the laws, (3) an act in furtherance of the conspiracy, and (4) that they or their property were injured, or they were deprived of exercising any right or privilege of a citizen of the United States. See Barstad v. Murray County, 420 F.3d 880, 887 (8th Cir. 2005); Larson v. Miller, 76 F.3d 1446, 1454 (8th Cir. 1996). A claim under §1985(3) requires proof of invidious discriminatory intent and a violation of a serious constitutional right that is protected from official and private encroachment. Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 267-68 (1993). The list of rights to which §1985 applies is reserved to claims involving racial or class-based invidiously discriminatory animus. Id.

"[Title] 42 U.S.C. § 1986, a companion statute to § 1985, allows an action against a party who knows that a § 1985 deprivation will occur, has the power to prevent it, and fails to do so." Kaminsky v. Missouri, No. 4:07-CV-1213, 2007 U.S. Dist. LEXIS 75763, at *17 (E.D. Mo. Oct. 11, 2007). "In order to state a claim for a § 1986 violation, Plaintiff must first state a claim for a § 1985 violation." Id. (citing McIntosh v. Ark. Republican Party-Frank White Election Comm., 766 F.2d 337, 340 (8th Cir. 1985)); Barstad, 420 F.3d at 887 (a §1986 claim must be

predicated upon a valid § 1985 claim); <u>Jensen v. Henderson</u>, 315 F.3d 854, 863 (8th Cir. 2002)(same).

Plaintiff's §§1985 and 1986 claims against the individual defendants fail because she has not alleged that any of the individual Defendants formed any specific agreement to take any specific action in violation of any of Plaintiff's rights.  For example, Plaintiff alleges that Tiffany "Axton and K. Robinson were engaged in a conspiracy that would serve to severe [sic] Plaintiff's SEMPA contracts and to deprive her of the equal right to participate in SEMPA as white persons."  (Amended Complaint, ¶79); "Stevens' knowledge of Plaintiff's filed Student Court grievance would make evident her intertwined relationship and conspiracy with Braddix, Chou, and Huffman to continue to deprive Plaintiff of her protected student rights." (Amended Complaint, ¶133); Amended Complaint, ¶166 ("Montague wilfully contributed to a conspiracy that interfered with Plaintiff's student contracts and left her victim to racially discriminatory environments within SEMPA and on the UMSL campus."); Amended Complaint, ¶167 ("Coonrod breached this duty and contributed to a conspiracy that caused the deprivation of Plaintiff's constitutional and civil rights and [t]he severance of her student contracts.") Amended Complaint, ¶168 ("Braddix contributed to a conspiracy that breached Plaintiff's student contracts, maintained SEMPA and UMSL'[s] racially discriminatory environment, and caused a greater deprivation of her constitutional and civil rights."); Amended Complaint, ¶170 (Huffman "supported a conspiracy that deprived Plaintiff of her constitutional and civil rights").   Plaintiff has not alleged a meeting of the minds of any defendants to pursue a specific discriminatory or retaliatory end.   Rather, Plaintiff merely alleges that various individuals "conspired" to deprive Plaintiff of the right to her "contractual rights" as President of SEMPA.   Plaintiff fails to allege what the actual role was agreed to by each individual in support of this discriminatory and retaliatory plan. Plaintiff's formulaic and conclusory allegations are insufficient to support a

conspiracy claim. Because Plaintiff's §1985(3) claim fails, her §1986 claim also fails. See, e.g., Kaylor v. Fields, 661 F.2d 1177, 1184 (8th Cir.1981) (cause of action under § 1986 is dependent on valid claim under § 1985). Accordingly, Plaintiff's §§1985 and 1986 claims against Defendants are dismissed.

### E.      State Law Claims

Plaintiff purports to assert a claim for "other state torts" (Amended Complaint, ¶40), which the Court assumes are the torts of intentional infliction of emotional distress and negligent infliction of emotional distress. The Court has dismissed all of Plaintiff's federal claims and declines to exercise supplemental jurisdiction over Plaintiff's state law torts, which are dismissed without prejudice. See 28 U.S.C. §1367.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Plaintiff's Complaint [36] and Defendants' Motion to Dismiss or in the Alternative Strike Plaintiff's Amended Complaint [46] are **GRANTED**. An appropriate Order of Dismissal and Judgment is filed simultaneously herewith.

**IT IS FURTHER ORDERED** that Plaintiff's Renewed Motion for Leave to Proceed In Forma Pauperis [30], Plaintiff's Motion for Reconsideration of the February 24, 2014 Order [41], Plaintiff's Motion to Strike Defendant's Reply in Support of Their Motion to Dismiss Plaintiff's Complaint [49] are **DENIED** as moot.

Dated this 29th day of September, 2014.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE